**PERKINS COIE LLP**
Timothy L. Alger (Bar No. 160303)
talger@perkinscoie.com
Julie E. Schwartz (Bar No. 260624)
jschwartz@perkinscoie.com
3150 Porter Drive
Palo Alto, CA  94304-1212
Telephone:  650.838.4300
Facsimile:   650.838.4350

Attorneys for Defendant
Redbox Automated Retail, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| FRANCIS JANCIK, individually and on behalf of others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>REDBOX AUTOMATED RETAIL, LLC, a Delaware limited liability company; VERIZON AND REDBOX DIGITAL ENTERTAINMENT SERVICES, LLC, a Delaware limited liability company; and DOES 1 through 10, inclusive,<br><br>     Defendants. | **No. SACV13-01387-DOC (RNBx)**<br><br>**DEFENDANT REDBOX AUTOMATED RETAIL, LLC'S MOTION TO DISMISS FIRST, SECOND AND THIRD CAUSES OF ACTION OF PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>**[Fed. R. Civ. P. 12(b)(6)]**<br><br>Date:   April 7, 2014<br>Time:   8:30 a.m.<br>Judge:  Hon. David O. Carter<br>Courtroom: 9D |

1   Please take notice that on April 7, 2014 at 8:30 a.m., or as soon thereafter as

2   counsel may be heard, in the Courtroom of the Honorable David O. Carter,

3   Courtroom 9D, Ronald Reagan Federal Building and U.S. Courthouse, 411 West

4   Fourth Street, Santa Ana, CA 92701-4516, Defendant Redbox Automated Retail,

5   LLC ("Redbox"), by and through its attorneys Perkins Coie LLP, will and hereby

6   does move this Court to dismiss the First, Second, and Third Causes of Action of

7   Plaintiff's Second Amended Complaint for failure to state a claim pursuant to

8   Federal Rule of Civil Procedure 12(b)(6).

9   This Motion is made following the conference of counsel pursuant to Local

10  Rule 7-3, which took place on February 5, 2014.

11  The Motion is based on the grounds that Plaintiff has failed to allege

12  cognizable harm under the ADA or related state statutes.  The ADA does not

13  regulate the content or characteristics of goods and services offered at places of

14  public accommodation.  Further, any interpretation of the ADA and state statutes

15  that would require Redbox to make available only those DVDs that are closed-

16  captioned runs afoul of the First Amendment.

17  This Motion is based on this Notice and the accompanying Memorandum of

18  Points and Authorities, all pleadings, files and records in this action, arguments of

19  counsel, and those matters regarding which the Court may take judicial notice.

20

21  Dated: February 13, 2014          **PERKINS COIE LLP**

22

23  By: /s/ Timothy L. Alger

          Timothy L. Alger

24

    Attorneys for Defendant
25  Redbox Automated Retail, LLC

26

27

28

-1-

# TABLE OF CONTENTS

**Page**

I.    SUMMARY OF ARGUMENT ........................................................ 1

II.   BACKGROUND ......................................................................... 2

      A.    Plaintiff's Allegations ..................................................... 2

      B.    Procedural Background .................................................... 2

III.  LEGAL STANDARD ................................................................ 3

IV.   ARGUMENT ............................................................................ 3

      A.    Plaintiff Fails to Allege That Redbox Has Discriminated Against
            Him Because of His Disability ......................................... 3

            1.    By Federal Regulation, Redbox is Not Required to
                  Restrict its Inventory to DVDs that Are Closed-Captioned ...... 4

            2.    Plaintiff Cannot Allege a Sufficient "Nexus" Between the
                  Enjoyment of Redbox's Inventory and a Public
                  Accommodation ............................................................ 6

            3.    The ADA's "Auxiliary Aids and Services" Provision
                  Does Not Require Redbox to Modify the Inventory it
                  Makes Available .......................................................... 8

            4.    Plaintiff Has Not Requested a Reasonable Modification to
                  a Redbox Policy, Practice, or Procedure ...................... 9

      B.    Plaintiff's Allegations Are Not Sufficient to Support His Related
            State Causes of Action ................................................... 10

      C.    Construing the ADA and State Laws to Require Closed-
            Captioning of All Content Redbox Offers Would Impinge on
            Fundamental Constitutional Rights ................................ 12

            1.    Redbox's Selection of Movies is Expressive Speech
                  Subject to First Amendment Protection. ...................... 13

            2.    Forcing Redbox to Only Offer Captioned DVDs is a
                  Content-Based Restriction Which Cannot Survive Strict
                  Scrutiny ...................................................................... 13

            3.    Even if the ADA's Application to Redbox's Movie
                  Inventory Is Content-Neutral, it Still Does Not Survive
                  Intermediate Scrutiny ................................................. 17

V.    CONCLUSION ....................................................................... 18

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises,* 603 F.3d 666 (9th Cir. 2010)................................................................................8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..............................................3, 10

*Ball v. AMC Entertainment, Inc.,* 246 F. Supp. 2d 17 (D.D.C. 2003) ......................8

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ................................3

*Belton v. Comcast Cable Holdings, LLC,* 151 Cal. App. 4th 1224 (2007) ..............11

*Boos v. Barry*, 485 U.S. 312 (1988) ......................................16

*Brown v. Entertainment Merchants Association,* 131 S. Ct. 2729 (2011) .........13, 14

*Cullen v. Netflix, Inc.,* 880 F. Supp. 2d 1017 (N.D. Cal. 2012) ................3, 5, 11, 12

*Doe v. Mutual of Omaha Insurance Co.*, 179 F.3d 557 (7th Cir. 1999) ..................8

*Fair Housing Council of San Fernando Valley v. Roommate.com, LLC,* 666 F.3d 1216 (9th Cir. 2012)..........................................12, 18

*Ford v. Schering-Plough Corp.*, 145 F.3d 601 (3d Cir. 1998)..................................8

*Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075 (9th Cir. 2004) ..............9

*Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.* -- F.3d --, 2014 WL 449045 (9th Cir. Feb. 5, 2014) ................................11, 12, 15

*Lentini v. California for the Arts, Escondido,* 370 F.3d 837 (9th Cir. 2004)...........10

*McNeil v. Time Insurance Co.*, 205 F.3d 179 (5th Cir. 2000)..................................8

*Miami Herald Publishing Co. v. Tornillo,* 418 U.S. 241 (1974) ......................13, 15

*National Federation of the Blind v. Target Corp.,* 452 F. Supp. 2d 946 (N.D. Cal. 2006)..........................................3, 4, 6, 7, 8, 18

*Parker v. Metropolitan Life Insurance Co.*, 121 F.3d 1006 (6th Cir. 1997).............8

*R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992)......................................13

*Reno v. American Civil Liberties Union*, 521 U.S. 844 (1992)..........................15, 16

*Riley v. National Federation of the Blind of North Carolina, Inc.,* 487 U.S. 781 (1988) .............................................14,15, 16

*Smith v. California,* 361 U.S. 147 (1959)..................................14

-ii-

1

2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3

*Stern v. Sony Corp.,* No. CV 09-7710 PA (FFMx), 2010 WL 8022226 (C.D.
    Cal. Feb. 8, 2010) .................................................................................. 7, 9

4

5

*Stern v. Sony Corporation of America,* 459 F. App'x 609 (9th Cir. 2011) ............... 7

6

*Torres v. AT&T Broadband, LLC,* 158 F. Supp. 2d 1035 (N.D. Cal. 2001) .......... 5, 6

7

*Turner Broadcasting System, Inc. v. F.C.C.,* 512 U.S. 622 (1994) ............. 13, 15, 17

8

*U.S. v. Playboy Entertainment Group, Inc.*, 529 U.S. 803 (2000) ..................... 13, 14

9

*Valentini v. Shinseki*, 860 F. Supp. 2d 1079 (C.D. Cal. 2012) ................................. 3

10

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ................................... 14, 17, 18

11

*Weyer v. Twentieth Century Fox Film Corp.,* 198 F.3d 1104 (9th Cir. 2000) ....... 3, 5

12

*Wooley v. Maynard,* 430 U.S. 705 (1977) ............................................................. 15

13

**Statutes**

14

28 C.F.R. § 36.303(c)(1) ......................................................................................... 8

15

28 C.F.R. § 36.307(a) ............................................................................................. 5

16

28 C.F.R. § 36.307(c) ............................................................................................. 5

28 C.F.R. Pt. 36, App. C ......................................................................................... 5

17

42 U.S.C. § 12101(b)(1) ....................................................................................... 16

18

42 U.S.C. § 12182(b)(1)(A)(i-iii) ........................................................................... 4

19

42 U.S.C. § 12182(b)(2)(A)(iii) .............................................................................. 8

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     SUMMARY OF ARGUMENT

Redbox Automated Retail, LLC ("Redbox")[1] operates self-service video rental kiosks inside grocery and other stores.  Plaintiff has sued Redbox for alleged violation of the federal Americans with Disabilities Act ("ADA"), the California Unruh Civil Rights Act ("Unruh Act"), the California Disabled Persons Act ("DPA"), and other state statutes.[2]  Plaintiff, who is deaf, alleges that Redbox violates the law by making available to consumers movie DVDs that do not contain closed-captioning.  Plaintiff does not allege that he faced any barriers to access at Redbox kiosks or in using the video rental services provided at Redbox kiosks.

Plaintiff has failed to allege cognizable harm under the ADA or related state statutes.  The ADA does not regulate the content or characteristics of goods and services offered at places of public accommodation.  Just as a library is not required to lend only those books that it has available in Braille, a video rental service such as Redbox is not required to exclusively stock closed-captioned DVDs.  Further, any interpretation of the ADA and state statutes that would require Redbox to make available only those movie DVDs that are closed-captioned runs afoul of the First Amendment by imposing requirements on the distributors of expressive speech that will necessarily restrict access to that speech.

Redbox requests that this Court dismiss Plaintiff's claims against Redbox for violations of the ADA, the Unruh Act, and the DPA.

---

[1] Redbox Instant is a service provided by Verizon and Redbox Digital Entertainment Services, LLC, a separate entity and a co-defendant in this action.  This motion does not make arguments related to Redbox Instant or on behalf of Verizon and Redbox Digital Entertainment Services, LLC, which operates Redbox Instant and is separately represented in this action.  To the extent that Plaintiff's claims against Redbox rest on the theory that Redbox has liability for alleged acts of Verizon and Redbox Digital Entertainment Services, LLC, Redbox joins Verizon and Redbox Digital Entertainment Services, LLC's motion to dismiss.

[2] Plaintiff also asserts claims for alleged violation of the California Consumer Legal Remedies Act, Civ. Code §§ 1750 *et seq.,* the California False Advertising Law, Bus. & Prof. Code §§ 17500 *et seq.,* and the California Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.*  This motion does not challenge these causes of action.

-1-

## II.    BACKGROUND

### A.    Plaintiff's Allegations

The core of Plaintiff's first three causes of action against Redbox is that Redbox has discriminated against him on the basis of his hearing disability by failing to provide closed-captioning on all of the movies in Redbox's rental inventory.  (*See, e.g.,* Second Amended Complaint ("SAC") ¶¶ 1, 7, 28, 62, 65, 68.) (Dkt. 22.)

Redbox operates a network of automated video rental kiosks at retail stores in California and throughout the United States.  (SAC ¶¶ 3, 13, 24.)  Plaintiff does not allege that he cannot access and use Redbox's kiosks; in fact, he alleges in the SAC that he has successfully rented several titles.  (*Id.* ¶¶ 11, 41, 42, 44, 46.)  Plaintiff claims that he rented two discs from Redbox, that the discs stated closed-captioning was available on the discs, but that he was unable to view any of the closed-captioning.  (*Id.* ¶¶ 44, 46.)  He asserts that an "overwhelming majority of content available at [Redbox's] kiosks" is not closed-captioned, although he also alleges the kiosks and the website redboxinstant.com are set up such that "it is difficult, if not impossible, to determine the exact percentage of closed captioned content available" from Redbox.  (*Id.* ¶¶ 11, 28, 30, 31, 62.)

### B.    Procedural Background

Plaintiff filed his initial Complaint on September 6, 2013.  (Dkt. 1.)  On October 8, 2013, after Plaintiff informed Defendants of his intention to amend the Complaint, the parties stipulated that any amended complaint would be filed by October 25, 2013, and Defendants would respond by December 4, 2013.  The First Amended Complaint was filed on October 25, 2013.  (Dkt. 13.)  Redbox filed a motion to dismiss the first, second, and third causes of action of Plaintiff's First Amended Complaint on December 4, 2013.  (Dkt. 17.)  Thereafter, Plaintiff informed Defendants of his intention to further amend the Complaint.  The parties stipulated that the SAC would be filed on or before January 27, 2014, and

-2-

1  Defendants would file their responses within thirty days of the acceptance of the

2  SAC by the Court for filing.  (Dkt. 19.)  The SAC was filed on January 14, 2014.

3  (Dkt. 22.)

4  **III.  LEGAL STANDARD**

5      To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain

6  factual allegations sufficient to "state a claim to relief that is plausible on its

7  face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  "[L]abels and

8  conclusions" and "a formulaic recitation of the elements of a cause of action" are

9  insufficient. *Id.* at 555.  The complaint must allege "more than an unadorned, the-

10  defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

11  (2009).  "Dismissal is proper if the complaint lacks a 'cognizable legal theory' or

12  'sufficient facts alleged under a cognizable legal theory.'" *Valentini v. Shinseki*,

13  860 F. Supp. 2d 1079, 1089 (C.D. Cal. 2012) (citation omitted).

14  **IV.  ARGUMENT**

15      **A.  Plaintiff Fails to Allege That Redbox Has Discriminated Against**

16          **Him Because of His Disability.**

17      To state a discrimination claim under Title III of the ADA, a plaintiff must

18  allege that: "(1) he is disabled within the meaning of the ADA; (2) the defendant is

19  a private entity that owns, leases, or operates a place of public accommodation; and

20  (3) the plaintiff was denied a public accommodation by the defendant because of

21  his disability." *See Cullen v. Netflix, Inc.,* 880 F. Supp. 2d 1017, 1023 (N.D. Cal.

22  2012) (quoting *Ariz. ex rel. Goddard v. Harkins Amusement Enters.,* 603 F.3d 666,

23  670 (9th Cir. 2010)).  The Ninth Circuit has repeatedly confirmed that a "place of

24  public accommodation" within the meaning of Title III refers to an "actual, physical

25  place." *See, e.g., National Federation of the Blind v. Target Corp.,* 452 F. Supp. 2d

26  946, 952 (N.D. Cal. 2006); *Weyer v. Twentieth Century Fox Film Corp.,* 198 F.3d

27

28

1104, 1114 (9th Cir. 2000).[3]   Under the ADA, "discrimination" includes "the denial of the opportunity, by the disabled, to participate in programs or services, and providing the disabled with separate, but unequal, goods or services." *Target,* 452 F. Supp. 2d at 951 (citing 42 U.S.C. § 12182(b)(1)(A)(i-iii)).

Plaintiff has not alleged that he was denied the opportunity to rent movie DVDs from Redbox kiosks.  Rather, he complains only that some Redbox titles do not contain closed-captioning.  Under Plaintiff's theory, any distributor of expressive content – books, magazines, newspapers, movies, and music – can distribute those materials only if the distributor also provides all of that content in versions that can be fully enjoyed by deaf and blind consumers.  If versions are not available for disabled customers, then the content may not be distributed without violating the ADA.

The ADA plainly does not impose on merchants the requirement that all of their offered goods and services can be used and fully enjoyed by all consumers – particularly here, where the goods and services at issue convey protected speech. While Redbox *does* make available to its customers many movie titles that are closed-captioned (including the movies that Plaintiff rented), it is not obligated by law to provide closed-captioned versions of every title in its vast inventory. Plaintiff's theory of liability is defeated by the ADA implementing regulations, and by the fact that the ADA regulates only public accommodations – not goods and services lacking a "nexus" with the place of public accommodation.

### 1.  By Federal Regulation, Redbox is Not Required to Restrict its Inventory to DVDs that Are Closed-Captioned.

Plaintiff's SAC lacks any allegation that Redbox has denied him access to a public accommodation on the basis of his disability.  Plaintiff does not allege that

---

[3] For the purposes of this motion to dismiss, Redbox does not dispute that Plaintiff is disabled within the meaning of the ADA, or that the kiosks owned and operated by Redbox are "place[s] of public accommodation" under Title III.

-4-

1   he faced any barriers or was denied access to any Redbox kiosks. *See Cullen*, 880

2   F. Supp. 2d at 1023.  Further, Plaintiff does not allege that he was denied access to

3   the rental services offered by Redbox.  Instead, the gravamen of Plaintiff's

4   complaint is that he is unable to fully enjoy DVDs rented from a Redbox kiosk

5   because two movies he rented did not contain closed-captioning.  This allegation –

6   that Redbox has not altered all of its goods and services to accommodate the

7   hearing-impaired – does not give rise to a cognizable ADA claim.

8        First, the implementing regulations explicitly preclude it.  In its regulations

9   implementing Title III of the ADA, the Department of Justice explicitly dictated

10  that a public accommodation is not required "to alter its inventory to include

11  accessible or special goods that are designed for, or facilitate use by, individuals

12  with disabilities."  28 C.F.R. § 36.307(a).  The regulation's definition of "accessible

13  or special goods" specifically includes "closed-captioned video tapes."  28 C.F.R. §

14  36.307(c).  In the appendix to this regulation, the DOJ further explains that "a video

15  store must make its facilities and rental operations accessible, *but it is not required*

16  *to stock closed-captioned video tapes*."  28 C.F.R. Pt. 36, App. C (emphasis added).

17       Even aside from the regulation, Plaintiff lacks an injury cognizable under the

18  ADA.  Plaintiff has not alleged that Redbox has failed to make its kiosks and rental

19  services accessible to hearing-disabled individuals.  Given this, Redbox is not

20  required to alter the characteristics and content of the DVDs offered through its

21  rental service. *See Weyer*, 198 F.3d at 1115 (the "language [of the ADA] does not

22  require provision of different goods or services, just nondiscriminatory enjoyment

23  of those that are provided").

24       That uncaptioned DVDs cannot be as fully enjoyed by Plaintiff as those who

25  are not disabled is not a violation of the ADA. *See Torres v. AT&T Broadband,*

26  *LLC,* 158 F. Supp. 2d 1035, 1038 (N.D. Cal. 2001).  In *Torres*, the plaintiff claimed

27  that AT&T discriminated against him because the channel menu for AT&T's digital

28  cable service was inaccessible to visually impaired individuals. *Id.* at 1036.  The

-5-

1    plaintiff contended that the cable services were not "as valuable to him" as they

2    would have been if he were not visually impaired.  *Id.* at 1038.  The court found

3    that such allegations did not state a cognizable harm.  *Id.*  It reasoned that "[t]he

4    ADA only requires that the defendants do not discriminate against the visually

5    impaired in *accessing* their digital cable services.  If the visually impaired have

6    already gained access to the defendants' services, there can be no ADA violation."

7    *Id.* (emphasis added).

8         To the extent that Plaintiff alleges that he faces an access barrier because

9    Redbox makes captioned movies within its library "hard to locate," this claim

10   similarly falls short.  (*See* SAC ¶ 31.)  Plaintiff does not claim that the user

11   interface of Redbox's kiosks is inaccessible to him because of his hearing disability

12   or that the user interface in any way impairs his ability to rent movies at the kiosks.

13   As in *Torres,* Plaintiff is simply claiming that Redbox's user interface is not as

14   valuable to him as it would be if he were not hearing-disabled.  *See* 158 F. Supp. 2d

15   at 1038.  This is not a cognizable ADA claim, especially where Plaintiff has

16   demonstrated his access to Redbox's rental service by successfully renting DVDs

17   on more than one occasion.  (*See* SAC ¶¶ 44, 46.)

18        **2.    Plaintiff Cannot Allege a Sufficient "Nexus" Between the**

19               **Enjoyment of Redbox's Inventory and a Public**

20               **Accommodation**

21        In limited circumstances, a plaintiff may premise an ADA violation on the

22   basis of unequal access to a "service" provided by a place of public accommodation

23   if he sufficiently alleges that there is a "'nexus' between the challenged service and

24   the place of public accommodation."  *Target,* 452 F. Supp. 2d at 952.  Such claims

25   may arise where "'intangible barriers' restrict a disabled person's ability to *enjoy*

26   the defendant entity's goods, services and privileges."  *Id.* at 954 (quoting *Rendon*

27   *v. Valleycrest Prod., Ltd.,* 294 F.3d 1279, 1286 (11th Cir. 2002)) (emphasis in

28   original).

1    This does not mean that a service has to be equally enjoyed by the disabled

2    and the non-disabled.  In *Stern v. Sony Corporation*, the plaintiff alleged that he

3    was not able to fully enjoy Sony's video games due to visual processing disabilities

4    that prevented him from locating necessary friends, characters, and items within the

5    video game.  No. CV 09-7710 PA (FFMx), 2010 WL 8022226, at *1 (C.D. Cal.

6    Feb. 8, 2010).  Plaintiff's inability to locate items within the game allegedly

7    prevented him from "meaningfully interacting with fellow game enthusiasts at the

8    conventions and other events Sony organizes to promote the video games."  *Id.*  He

9    asserted that these conventions were "places of public accommodation" that he had

10   been denied access to because he could not "meaningfully interact" with other

11   gamers in attendance.  *Id.* at *3.

12   The *Stern* court observed that plaintiff had only been deterred from attending

13   the conventions, and had not actually been denied physical access.  *Id.*  Further, the

14   complaint lacked any allegation that Sony was "screen[ing] out" any individuals

15   from "'fully and equally enjoying' the conventions it hosts."  *Id.*  In fact, Plaintiff

16   conceded that "the only barrier to the place of public accommodation is the

17   difficulties [he] experiences while playing the video games."  *Id.*  The court thus

18   found that plaintiff had not provided the required "nexus" between the video game

19   and an actual physical place.  *Id.*

20   The Ninth Circuit affirmed, concluding that Stern's alleged "nexus" was "too

21   tenuous to support a cause of action under the ADA."  *Stern v. Sony Corp. of Am.,*

22   459 F. App'x 609, 610-11 (9th Cir. 2011).

23   The outcome should be the same here.  "[T]he purpose of the ADA's public

24   accommodations requirement is to ensure accessibility to the goods offered by a

25   public accommodation, not to alter the nature or mix of goods that the public

26   accommodation has typically provided."  *Target,* 452 F. Supp. 2d at 956 (citation

27   omitted).  As noted above, Title III of the ADA simply does not regulate the

28   *content* of the goods and services of a public accommodation, and Plaintiff's

-7-

1    "nexus" allegation is not sufficient to circumvent this requirement.  *See Harkins*,

2    603 F.3d at 672; *McNeil v. Time Ins. Co.*, 205 F.3d 179, 186-87 (5th Cir. 2000);

3    *Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557, 560 (7th Cir. 1999); *Ford v.*

4    *Schering-Plough Corp.*, 145 F.3d 601, 613 (3d Cir. 1998); *Parker v. Metropolitan*

5    *Life Ins. Co.*, 121 F.3d 1006, 1012 (6th Cir. 1997).

6         **3.**     **The ADA's "Auxiliary Aids and Services" Provision Does**

7                    **Not Require Redbox to Modify the Inventory it Makes**

8                    **Available.**

9         The "auxiliary aids and services" provision of the ADA cannot be used to

10   regulate the DVDs rented by Redbox.  (SAC ¶ 65.)  That provision provides that

11   public accommodations take necessary steps "to ensure that no individual with a

12   disability is excluded, denied services, segregated or otherwise treated differently

13   than other individuals" by the public accommodation "because of the absence of

14   auxiliary aids and services."  42 U.S.C. § 12182(b)(2)(A)(iii).  That is, public

15   accommodations must provide such aids in order to "effectively *communicate* with

16   individuals with disabilities."  28 C.F.R. § 36.303(c)(1); *Target*, 452 F. Supp. 2d at

17   955.  But Plaintiff does not allege that there are any intangible barriers that prevent

18   him from communicating at the kiosks themselves or at the website

19   redboxinstant.com,[4] nor does he allege that he faces communication barriers in

20   accessing the rental service provided at the Redbox kiosks.[5]

21        In *Sony*, the plaintiff claimed that Sony was required to modify its video

22

23   [4] Plaintiff claims that it is possible to use redboxinstant.com to search for titles, find the nearest Redbox

24   kiosk locations, reserve a title to pick up at a Redbox kiosk, and redeem credits from the website at physical kiosk locations.  (SAC ¶¶ 25 - 27.)  However, Plaintiff has not alleged that he has ever used the

25   Redbox Instant website in this way when renting movies from Redbox's kiosks, let alone that he faced any communication barriers in using the website.  (*See* SAC ¶¶ 44, 46.)

26   [5] Redbox kiosks are not movie theaters; rather, they offer an inventory of DVDs and Blu-Rays through an automated kiosk, like a video store rents movies and a bookstore sells books.  Plaintiff does not allege that

27   the service offered through Redbox includes the screening of movies at the kiosks.  *Cf. Ball v. AMC Enter., Inc.,* 246 F. Supp. 2d 17, 24 (D.D.C. 2003) (theaters not exempt from providing closed captioning

28   to hearing disabled individuals because they are "not similarly-situated to bookstores and video stores that provide goods… [theaters] provide the *service* of screening first run movies").

1   games to make "auxiliary aids and services" available so that he could fully enjoy

2   the video game.  2010 WL 8022226, at *4.  The court held that his argument was

3   based on a faulty understanding of the purpose of the "auxiliary aids and services"

4   provision.  The court noted that the problem with plaintiff's argument was that "he

5   [did] not seek an auxiliary aid to foster effective communication at a place of public

6   accommodation such as Sony's conventions, or to take full advantage of the goods,

7   services, and privileges available at the conventions."  *Id.* at *4.  Rather, plaintiff

8   sought auxiliary aids in order to "fully enjoy the *video games*," which the court had

9   already concluded were not sufficiently connected to Sony's conventions.  *Id.*

10  (emphasis added).  The court rejected this construction of the auxiliary aids and

11  services provision and cautioned that "[t]o hold otherwise would create potential

12  liability under the ADA for manufacturers… if [they] failed to make available

13  auxiliary aids allowing the entire panoply of individuals with disabilities the full

14  enjoyment of their products."  *Id.*

15       Plaintiff here cannot argue that Redbox is required to modify the DVDs

16  offered through its rental service to make "auxiliary aids and services" available

17  when he faced no communication barriers in using the kiosk itself.

18              **4.      Plaintiff Has Not Requested a Reasonable Modification to a**

19                   **Redbox Policy, Practice, or Procedure.**

20       Finally, Plaintiff's assertion that Redbox has discriminated against him by

21  failing to make a requested reasonable modification in policies, practices, or

22  procedures fails as a matter of law.  A plaintiff can make a claim of discrimination

23  under Title III where he requests a modification of "policies, practices, or

24  procedures" by the defendant that are necessary to accommodate the plaintiff's

25  disability and defendant refuses to make the modification.  *Fortyune v. Am. Multi-*

26  *Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004) (citing 42 U.S.C. §

27  12182(b)(2)(A)(ii)).

28       The SAC lacks any plausible assertion that Redbox employs any policy,

1   practice, or procedure that is discriminatory in effect, or that Plaintiff ever

2   requested a modification to any Redbox policy, practice or procedure.  Rather,

3   Plaintiff has merely alleged in a conclusory fashion that Redbox "designed,

4   constructed, implemented and maintained policies, practices, [and] procedures" that

5   contain access barriers to the deaf and hard of hearing, and "[m]odifying its policies

6   and providing closed captions as auxiliary aids and services… would not

7   fundamentally alter the nature of Redbox's DVD rental business, nor would it pose

8   an undue burden to this flourishing company."  (SAC ¶¶ 32, 65.)  This amounts to

9   nothing more than a legal conclusion and is not sufficient to state a claim for relief.

10  *Iqbal*, 556 U.S. at 678-79.

11        To the extent that the SAC can be construed as alleging that Redbox has a

12  "policy" or "practice" of not captioning movie DVDs and making captioned content

13  "hard to locate" (*see* SAC ¶¶ 31, 32), Plaintiff's requested modification is neither

14  reasonable nor necessary under the law.  As discussed above, modification of

15  entertainment content distributed by Redbox is not reasonable or required because

16  the ADA does not regulate goods and services of public accommodations.  (*See*

17  *supra* Section IV(A)(1)-(3).)

18        Further, the requested modification, even if made, would not as a practical

19  matter accommodate Plaintiff's disability under the law.  Plaintiff has not alleged

20  that the refusal to modify excludes him from Redbox's kiosks or Redbox's rental

21  service provided at those kiosks.  *See Lentini v. Cal. Center for the Arts, Escondido*,

22  370 F.3d 837, 845 (9th Cir. 2004).

23        **B.    Plaintiff's Allegations Are Not Sufficient to Support His Related**

24               **State Causes of Action.**

25        Plaintiff contends that Redbox's alleged ADA violations also provide the

26  basis for claims under the Unruh Act and DPA.  (SAC ¶¶ 76, 84.)  To the extent

27  Plaintiff's Unruh and DPA claims mirror his ADA claims, these causes of action

28

-10-

1   should be dismissed for the reasons set forth above.  (*See supra* Section IV(A)(1).);

2   *Belton v. Comcast Cable Holdings, LLC,* 151 Cal. App. 4th 1224, 1238 (2007).

3         Plaintiff's attempt to set forth an Unruh Act violation independent of the

4   alleged ADA violation falls short.  "A violation of the Unruh Act may be

5   maintained independent of an ADA claim only where a plaintiff pleads '*intentional*

6   *discrimination* in public accommodations in violation of the terms of the Act.'"

7   *Cullen*, 880 F. Supp. 2d at 1024 (emphasis added).  Intentional discrimination

8   requires allegations of "'willful, affirmative misconduct,' and the plaintiff must

9   allege more than the disparate impact of a facially neutral policy on a particular

10  group." *Id.* (citing *Koebke v. Bernardo Heights Country Club,* 36 Cal. 4th 824, 854

11  (2005)).

12        Plaintiff asserts that Redbox's alleged discrimination is intentional because

13  Redbox has designed, constructed, implemented and maintained policies, practices,

14  procedures, and barriers that discriminate against the hearing disabled with

15  knowledge of this discrimination, and that Redbox has failed to take action to

16  prevent this discrimination.  (SAC ¶ 75.)  These conclusory allegations, however,

17  do not rise to the "willful, affirmative misconduct" standard required for an

18  independent Unruh claim.

19        In *Cullen*, plaintiff argued that Netflix had intentionally discriminated against

20  hearing-impaired individuals in violation of the Unruh Act because it did not

21  provide closed-captioning on "a meaningful amount of its streaming library" and

22  only a small portion of its library was captioned.  *Cullen*, 880 F. Supp. 2d at 1024.

23  The court held that such allegations were not sufficient because they merely

24  "describe[d] a policy with disparate impact on hearing-impaired individuals, but

25  [did] not describe willful, affirmative misconduct." *Id.; accord Greater Los*

26  *Angeles Agency on Deafness, Inc. v. Cable News Network, Inc. ("CNN")*, -- F.3d --,

27  2014 WL 449045, at *7-*8 (9th Cir. Feb. 5, 2014) (no intentional discrimination

28  where CNN did not offer closed captioning on any news video offered at its

-11-

1  website, given that this practice "applied equally to all CNN.com visitors, hearing-

2  impaired or not").  Plaintiff also has not plausibly alleged that Redbox has

3  intentionally discriminated against him *because of* his disability.  *See CNN*, 2014

4  WL 449045, at *8.

5          Plaintiff's DPA claim similarly cannot be saved by alleging that it rests on

6  grounds separate and distinct from his ADA claim.  An independent DPA claim

7  "requires a showing that accessibility regulations promulgated under California law

8  exceed those set by the ADA."  *Cullen*, 880 F. Supp. 2d at 1025.  The SAC is silent

9  as to any relevant standards established by California law that exceed those set by

10  the ADA.  *See id.*

11          **C.    Construing the ADA and State Laws to Require Closed-**

12                  **Captioning of All Content Redbox Offers Would Impinge on**

13                  **Fundamental Constitutional Rights.**

14          This Court cannot extend the ADA or the related state laws in a manner that

15  regulates Redbox's library of DVD titles without running afoul of the First

16  Amendment.  Such an interpretation of the ADA would punish those who distribute

17  expressive speech simply whenever that speech cannot be as fully enjoyed by the

18  hearing-impaired as by those who are not impaired.

19          It is axiomatic that "statutes will be interpreted to avoid constitutional

20  difficulties."  *Fair Housing Council of San Fernando Valley v. Roommate.com,*

21  *LLC,* 666 F.3d 1216, 1222 (9th Cir. 2012).  "Where an otherwise acceptable

22  construction of a statute would raise serious constitutional problems, the Court will

23  construe the statute to avoid such problems unless such construction is plainly

24  contrary to the intent of Congress."  *Id.* (quoting *Pub. Citizen v. U.S. Dep't of*

25  *Justice*, 491 U.S. 440, 466 (1989)).  Given the likely impact on free speech, the

26  ADA must not be read so expansively as to require Redbox to exclude from its

27  rental inventory all titles that are not closed-captioned.

28

1. **Redbox's Selection of Movies is Expressive Speech Subject to First Amendment Protection.**

The movies and other media offered through Redbox's inventory are afforded the highest level of First Amendment protection as expressive speech. *Brown v. Entm't Merchants Assn.,* 131 S. Ct. 2729, 2733 (2011) (noting that movies "communicate ideas – and even social messages – through many familiar literary devices… and through features distinctive to the medium"). Additionally, Redbox's choice of movies that it makes available to consumers is an act of editorial decision-making and constitutes protected speech. *See Turner Broadcasting System, Inc. v. F.C.C.,* 512 U.S. 622, 636 (1994) ("'[B]y exercising editorial discretion over which stations or programs to include in its repertoire,' cable programmers and operators 'seek to communicate messages on a wide variety of topics and in a wide variety of formats.'"); *Miami Herald Pub. Co. v. Tornillo,* 418 U.S. 241, 258 (1974) (rejecting statute requiring newspaper to make space available as a matter of fairness).

2. **Forcing Redbox to Only Offer Captioned DVDs is a Content-Based Restriction Which Cannot Survive Strict Scrutiny.**

Plaintiff's proposed interpretation of the ADA, which would force Redbox to only offer movies with closed-captioning, would be a content-based regulation that must be analyzed with strict scrutiny. Regulations that "suppress, disadvantage, or impose differential burdens upon speech because of its content" are held to the most exacting scrutiny. *Turner*, 512 U.S. at 642; *Brown*, 131 S. Ct. at 2733 ("As a general matter, government has no power to restrict expression because of its message, its ideas, its subject matter, or its content."). Where a statute regulates speech based on its content, it must be "narrowly tailored" to achieve a "compelling government interest." *U.S. v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 813 (2000); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 395 (1992). The government must

-13-

1   "specifically identify an 'actual problem' in need of solving, and the curtailment of

2   free speech must be actually necessary to the solution." *Brown*, 131 S. Ct. at 2738

3   (citing *Playboy*, 529 U.S. at 822-23, and *R.A.V.*, 505 U.S. at 395).  In light of this

4   demanding standard, it is rare that a content-based regulation can withstand

5   challenge. *Id.* (citing *Playboy*, 529 U.S. at 818).

6       Construing the ADA to force Redbox to maintain an inventory comprised

7   only of captioned DVDs would transform a facially content-neutral regulation into

8   a content-based regulation.  Plaintiff's proposed application of the ADA would

9   punish Redbox based on the content of its speech – specifically, it would impose

10  liability because Redbox allegedly makes available to the public movies that are

11  uncaptioned. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

12      This impinges on Redbox's freedom of speech because it compromises both

13  the right to speak and the right *not* to speak, which are equally protected under the

14  First Amendment. *See, e.g., Riley v. National Federation of the Blind of North*

15  *Carolina, Inc.,* 487 U.S. 781, 796-97 (1988).  With respect to Redbox's right to

16  speak, the ADA must not be used to restrict Redbox's choice of movies, which

17  otherwise might include uncaptioned DVDs. *See Playboy*, 529 U.S. at 811.  Under

18  Plaintiff's reading of the ADA, Redbox must engage in self-censorship, thus

19  restricting the public's access to uncaptioned content that the government would not

20  otherwise be able to directly suppress without impinging on free speech. *See Smith*

21  *v. California*, 361 U.S. 147, 153-4 (1959) (holding ordinance criminalizing

22  booksellers for the possession and distribution of obscene materials overbroad).

23  Just as a bookseller required to inspect all of his materials to root out obscenity

24  would necessarily reduce the entire corpus of books offered to the public, a

25  regulation charging Redbox with inspecting thousands of movies and only offering

26  captioned content would necessarily restrict the entire library of films offered to the

27  public. *Id.*

28

Further, forcing Redbox to only offer captioned content implicates Redbox's right *not* to speak.  Laws that compel speech are held to the same strict scrutiny as traditional content-based regulations because "[m]andating speech that a speaker would not otherwise make necessarily alters the content of the speech." *Riley*, 487 U.S. at 795; *see also Tornillo*, 418 U.S. at 256; *Wooley v. Maynard,* 430 U.S. 705, 714-17 (1977) (individual could not be compelled to display "Live Free or Die" state motto on license plate).[6]

The Ninth Circuit's recent *CNN* decision involving closed captioning is inapposite.  There, plaintiff alleged that the CNN.com website violated the Unruh Act and DPA by intentionally excluded hearing disabled individuals from accessing news videos by failing to provide captioning.  *CNN*, 2014 WL 449045, at*3.  CNN argued that interpreting the DPA to require CNN.com to provide closed captioning would impermissibly burden CNN's speech by forcing it to speak.  The Ninth Circuit disagreed, finding that a captioning requirement "would simply require CNN to express the same speech it already expresses to hearing visitors of CNN.com." *Id.* at *12 n.7.

Unlike CNN, which is both the creator and distributor of its online news streaming video, Redbox is solely a distributor.  It does not create or control the movies available at its kiosks.  Plaintiff seeks to punish Redbox for its choice of expressive content originating from others.  *See Turner,* 512 U.S. at 636 (protecting exercise of editorial discretion over which stations or programs to offer); *Tornillo,* 418 U.S. at 258 (rejecting statute requiring newspaper to make space available as a matter of fairness).[7]  Under Plaintiff's theory of liability, Redbox must either add captions to DVDs that convey the speech of other parties, or exclude it entirely from its inventory.  Compelling a distributor such as Redbox to only offer

---

[6] Redbox's in-store rental kiosks do not fall within the historic justification for government regulation of the broadcast media. *See Reno v. American Civil Liberties Union*, 521 U.S. 844, 868 (1992).
[7] To the extent the creator of video content may be liable for not offering closed captioning, Redbox is not the proper party and should be dismissed from this case.

1    captioned movies in its rental library would require it to engage in speech where it
2    might otherwise choose to be silent.  *Riley*, 487 U.S. at 795.  *CNN* is not controlling
3    here.

4           Either way, interpreting the ADA as requiring Redbox to offer to consumers
5    only captioned content would chill speech.  Redbox would be compelled to limit its
6    inventory to only those titles that have closed-captioning and are fully enjoyable by
7    the deaf, drastically reducing the amount of expressive speech that otherwise would
8    be available to millions of people who do not have hearing impairments.  (*See* SAC
9    ¶ 3 (alleging Redbox has rented over 2 billion movies nationally and accounts for
10   1/3 of the movie rental market).)

11          Smaller movie studios, as well as independent filmmakers, may not have the
12   resources to offer closed-captioning.  Additionally, some older films may not have
13   been closed-captioned when made, and adding closed-captioning might impose
14   costs that dissuade owners from distributing them.  Limiting Redbox's movie DVD
15   inventory to those titles with captions would result in the widespread availability
16   only of videos created by studios and distributors that have large resources and the
17   incentive to invest in closed-captioning.  The ADA must not be read to burden
18   speech in this manner.

19          Clearly, then, an interpretation of the ADA that punishes the distribution of
20   content lacking captions fails constitutional strict scrutiny because it would not be
21   "narrowly tailored" to serve the government's interests in enacting the ADA.
22   Regulations are not narrowly tailored where less restrictive means are available or
23   where the regulation is not necessary to achieve the compelling government
24   interest.  *Boos v. Barry*, 485 U.S. 312, 329 (1988).  While the government might
25   have a compelling interest in the elimination of discrimination based on disability,
26   42 U.S.C. § 12101(b)(1), construing the ADA in a manner that restricts speech for
27   the *non*-disabled is like bringing a sledgehammer to a problem that requires the
28   precise tools of a watchmaker.  *See Reno,* 521 U.S. at 885 (holding

1    Communications Decency Act unconstitutional because it restricted speech for

2    adults based on the government's stated goal of protecting minors).

3          Moreover, construing the ADA to regulate the content offered by public

4    accommodations is not necessary to the goal of eliminating discrimination against

5    the disabled.  The government has already recognized as much in its regulations

6    implementing Title III.  (*See supra* Section IV(A)(1).)  The ADA aims to ensure

7    that individuals with disabilities are provided equal *access* to public

8    accommodations and the goods and services provided therein.  This does not extend

9    to alteration of inventory.  *Id.*  At a minimum, there are a number of less restrictive

10   alternatives than forcing Redbox to alter the inventory it offers through its rental

11   service.  As technology evolves and speech recognition software and equipment

12   becomes more commonplace, there will be many other means for disabled persons

13   to obtain captioned content without burdening Redbox's speech.

14          **3.    Even if the ADA's Application to Redbox's Movie Inventory**

15                **Is Content-Neutral, it Still Does Not Survive Intermediate**

16                **Scrutiny.**

17          If Plaintiff's proposed application of the ADA is regarded as a content-

18   neutral restriction, it would impermissibly burden Redbox's speech under the less-

19   exacting intermediate scrutiny standard.  "Laws that confer benefits or impose

20   burdens on speech without reference to the ideas or views expressed" are generally

21   treated as content-neutral, and thus held to an intermediate level of scrutiny.

22   *Turner*, 512 U.S. at 642-43.  Such laws are often deemed "time, place, or manner"

23   regulations, and "must be narrowly tailored to serve the government's legitimate,

24   content-neutral interests."  *Ward*, 491 U.S. at 798.

25          Unlike content-based regulations, time, place and manner restrictions "need

26   not be the least restrictive or least intrusive means" of promoting a "substantial

27   government interest."  *Id.* at 798-99.  Although this standard is less demanding than

28   strict scrutiny, a time, place, or manner regulation may not "burden substantially

-17-

more speech than is necessary to further the government's legitimate interests. Government may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Id.* at 800 (citing *Frisby v. Schultz*, 487 U.S. 474, 485 (1988)).

This case does not implicate the civil rights that Congress sought to protect when it enacted the ADA. Congress was concerned with tangible and intangible barriers to *access* in public accommodations. *See, e.g., Target*, 452 F. Supp. 2d at 951. As demonstrated above, Plaintiff has not alleged any such access barriers to its kiosks, *see supra* Section IV(A)(1), and construing the ADA to regulate Redbox's inventory would not serve to advance the goals of equal access to public accommodations. Such interpretation would cause the government to burden substantially more speech than necessary to further its interests in eliminating barriers that prevent disabled individuals from accessing public accommodations.

Accordingly, the Court should avoid serious constitutional concerns and reject any interpretation of the ADA that imposes on Redbox the obligation to offer consumers only captioned content. *See Fair Housing Council*, 666 F.3d at 1222.

## V.     CONCLUSION

For the foregoing reasons, Redbox respectfully requests that the First, Second, and Third Claims for Relief of Plaintiff's Second Amended Complaint be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

DATED:  February 13, 2014                   **PERKINS COIE LLP**

By: /s/ Timothy L. Alger
    Timothy L. Alger

Attorneys for Defendant
Redbox Automated Retail, LLC