1  **MARLIN & SALTZMAN**
   Stanley D. Saltzman, Esq. (SBN 90058)
2  Christina A. Humphrey, Esq. (SBN 226326)
   Leslie H. Joyner, Esq. (SBN 262705)
3  29229 Canwood Street, Suite 208
   Agoura Hills, California   91301
4  Telephone:   (818) 991-8080
   Facsimile:    (818) 991-8081
5  ssaltzman@marlinsaltzman.com
   chumphrey@marlinsaltzman.com
6  ljoyner@marlinsaltzman.com
7
   Attorneys for Plaintiff Francis Jancik
8

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11

12

13 FRANCIS JANCIK, individually and          ) **CASE NO. SACV13-01387 DOC (RNBx)**
   on behalf of others similarly situated,   ) (Assigned to the Honorable David O. Carter)
14                                            )
                                              )
15            Plaintiff,                      ) **PLAINTIFF'S OPPOSITION TO**
                                              ) **DEFENDANT REDBOX AUTOMATED**
16 v.                                         ) **RETAIL, LLC'S MOTION TO DISMISS**
                                              ) **FIRST, SECOND AND THIRD CAUSES**
17                                            ) **OF ACTION OF PLAINTIFF'S**
                                              ) **SECOND AMENDED COMPLAINT**
18 REDBOX AUTOMATED RETAIL,                   )
   LLC, a Delaware limited liability          )
19 company, VERIZON AND REDBOX               )
   DIGITAL ENTERTAINMENT                      )
20 SERVICES, LLC, a Delaware limited          ) Date:        April 14, 2014
   liability company; and DOES 1 through      ) Time:        8:30 a.m.
21 10, inclusive,                             ) Ctrm:        9D
                                              )
22                                            )
                                              )
23            Defendants.                     )
                                              )
24                                            )
                                              )
25 _____ )

26

27

28

---

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ............................................................................ 1

II.   LEGAL STANDARD .................................................................... 3

III.  PLAINTIFF HAS SUFFICIENTLY ALLEGED REDBOX
      DISCRIMINATED AGAINST HIM BECAUSE OF HIS DISABILITY ........ 4

      A.    Access Under the ADA is Not Limited to Physical Access ............... 5

      B.    Redbox's DVDs Are Available at its "Brick and Mortar" Kiosks ..... 6

      C.    Plaintiff has Sufficiently Alleged Discrimination Based on Redbox's
            Failure to Provide Auxiliary Aids and Services .................................. 7

      D.    Plaintiff is not Required to Plead Redbox's Affirmative Defenses .. 11

      E.    Closed Captioned DVDs are Not Special Goods .............................. 13

IV.   PLAINTIFF HAS PLED HIS STATE LAW CLAIMS .................................. 17

V.    PLAINTIFF'S DISABILITY CLAIMS DO NOT VIOLATE THE FIRST
      AMENDMENT ............................................................................ 17

      A.    Redbox's Inventory Is Not Expressive Speech ................................. 17

      B.    Even if a Captioning Requirement Does Regulate Speech, it is At
            Most Content-neutral and Narrowly Tailored to Serve Important
            Governmental Interests ...................................................... 19

VI.   CONCLUSION ............................................................................ 21

1

## **TABLE OF AUTHORITIES**

2

**Federal Cases**

3

*Bass v. County of Butte*

4

   458 F.3d 978 (9th Cir.2006) ................................................................ 17

5

*Brown v. Entm't Merchants Assn.*

6

   131 S. Ct. 2729, 2733 (2011) ............................................................. 17

7

*Conley v. Gibson*

8

   355 U.S. 41 (1957) ................................................................................. 4

9

*Davis v. Monroe City, Bd. Of Educ.*

10

   526 U.S. 629 (1999) ............................................................................... 3

11

*Fortyune v. Am. Multi-Cinema, Inc.*

12

   364 F.3d 1075 (9th Cir. 2004) ............................................................. 12

13

*Gottfried v. FCC*

14

   655 F.2d 297 (D.C. Cir. 1981) ....................................................... 3, 19

15

*Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network*

16

   742 F.3d 414 (9th Cir. 2014) .......................................................... 3, 19

17

*Hishon v. King & Spalding*

18

   467 U.S. 69 (1984) ......................................................................... 4, 14

19

*In re Stac Elecs. Sec. Litig.*

20

   89 F.3d 1399 (9th Cir. 1996) ......................................................... 3, 20

21

*Lentini v. California Center for the Arts, Escondido*

22

   370 F.3d 837 (9th Cir. 2004) ...................................................... 12, 13

23

*Molski v. M J. Cable, Inc.*

24

   481 F.3d 724 (9th Cir. 2007) ................................................................. 5

25

*Motion Picture Ass'n of Am., Inc. v. FCC*

26

   309 F.3d 796 (D.C. Cir. 2002) ....................................................... 3, 19

27

*National Federation of the Blind v. Target Corp.*

28

   452 F. Supp.2d 946 (N.D. Cal. 2006) ............................................ 9, 10

*Navarro v. Block*
   250 F.3d 729 (9th Cir.2001) ................................................................ 3

*Pickering v. Board of Educ.*
   391 U.S. 563 (1968) ...................................................................... 18

*Rendon v. Valleycrest Prod., Ltd.*
   294 F.3d 1297 (11th Cir. 2002) ....................................................... 9

*Smith v. Goguen*
   415 U.S. 566 (1974) .................................................................. 3, 18

*Stern v. Sony Corp.*
   2010 WL 8022226 (C.D. Cal. 2010) ...................................... passim

*Stoutenborough v. National Football League*
   59 F.3d 580 (6th Cir. 1995) ............................................................ 9

*Texas v. Johnson*
   491 U.S. 397 (1989) ...................................................................... 18

*Tinker v. Des Moines Indep. Community Sch. Dist.*
   393 U.S. 503 (1969) ...................................................................... 18

*Torres v. AT&T Broadband, LLC*
   158 F. Supp. 2d 1035 (N.D. Cal. 2001) .......................................... 16

*Turner Broadcasting System, Inc. v. F.C.C.*
   512 U.S. 622 (1994) ...................................................................... 19

*United States v. O'Brien*
   391 U.S. 367 (1968) ...................................................................... 18

*Ward v. Rock Against Racism*
   491 U.S. 781 (1989) ................................................................. 19, 20

*Weyer v. Twentieth Century Fox Film Corp.*
   198 F.3d 1104 (9th Cir. 2000) ..................................................... 6, 9

Opposition to Defendant Redbox Automated Retail, LLC's Motion to Dismiss
Case No. SACV13-01387-DOC (RNBx)

**Federal Statutes**

28 C.F.R. § 36.303 ................................................................. 2, 6, 8

28 C.F.R. § 36.307 ............................................................... 2, 13, 15

42 U.S.C. § 12102 ........................................................................ 6

42 U.S.C. § 12103 .................................................................. 2, 6, 8

42 U.S.C. § 12182 ................................................................. passim

**State Statutes**

Civ. Code § 51 ......................................................................... 17

Civ. Code § 54 ......................................................................... 17

**Other Authorities**

Appendix B to the DOJ's ADA Regulations

    Subpart C, 36.302, (1991) ...................................................... 13

House Report on the ADA (1990)

    H.R. Rpt. 101-485(II) ...................................................... 6, 10, 15

*In re Implementation of Video Description of Video Programming*

    5 FCC Rcd. 15230 (2001) ...................................................... 19

The Americans with Disabilities Act,

    Title II Technical Assistance Manual (1993) ............................... 13

## I.   INTRODUCTION

In its Motion to Dismiss First, Second and Third Causes of Action of Plaintiff's Second Amended Complaint (hereinafter, "Motion"), Defendant Redbox Automated Retail, LLC (hereinafter, "Defendant" or "Redbox") seeks dismissal of this civil rights action.  Plaintiff Francis Jancik (hereinafter, "Plaintiff"), a deaf individual, brings this case on behalf of himself and other deaf and hard of hearing individuals in California and nationwide against Redbox Automated Retail, LLC (a provider of DVD and Blu-Ray discs at automated kiosks inside grocery and other stores) (hereinafter, "Redbox" or "Defendant") and Defendant Verizon and Redbox Digital Entertainment Services, LLC (a streaming video service provider).[1]   Plaintiff alleges that Defendants have failed to provide equal access to their DVD and Blu-ray (hereafter "DVD") and video streaming services by refusing to make available closed captioned text for the deaf and hard of hearing.   Plaintiff brings this case pursuant to the Americans with Disabilities Act of 1990 ("ADA"), California Unruh Civil Rights Act, and Disabled Persons Act (First, Second, and Third Causes of Action, respectively)

The ADA was enacted to prohibit discrimination against individuals with disabilities in employment, state and local government programs and services, public accommodations, transportation, and telecommunications, and to integrate individuals with disabilities into the mainstream of American life. Places of public accommodation, which include sales or rental establishments, must provide auxiliary aids and services, unless doing so would constitute a fundamental alteration or result in an undue burden. The requirement to provide auxiliary aids and services is a flexible one, determined on a case-by-case basis.

Despite the direct application of ADA principles and provisions to this case, Redbox argues that Plaintiff is precluded from seeking redress under the federal and

---

[1] Defendant Verizon and Redbox Digital Entertainment Services is a co-defendant in this case. This opposition responds only to Defendant Redbox Automated Retail, LLC's Motion to Dismiss.

Opposition to Defendant Redbox Automated Retail, LLC's Motion to Dismiss
Case No. SACV13-01387-DOC (RNBx)

state disability statutes at issue. Redbox's arguments are all fatally flawed.   *First*, Redbox contends that Plaintiff has failed to allege a cognizable claim under the ADA because he was not denied *physical* access to Redbox's kiosks, but rather seeks an auxiliary aid to fully enjoy DVDs rented from a Redbox kiosk. (Motion 4-5). However, contrary to Defendant's assertion, "access" under Title III of the ADA refers not only to physical access, but also the opportunity to make the physical access meaningful.  *See* 42 U.S.C. § 12182(a).  By mandating the provision of auxiliary aids and services, including captioning, the ADA recognizes that the type of access deaf and hard of hearing individuals require is communication access.  *See* 42 U.S.C. § 12103, 42 U.S.C. § 12182; *see also* 28 C.F.R. § 36.303(b)(1). Further, Redbox's attempt to limit the ADA to discrimination in the provision of goods occurring on the premises of a public accommodation contradicts the plain language of the statute which provides "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a).

       *Second*, unlike Braille books, closed captioned DVDs are not special goods.[2] Redbox acknowledges that it already provides its customers "many" closed captioned DVDs.  These DVDs are not special goods Redbox provides for the deaf and hearing impaired; rather they are ***the exact same DVDs*** it offers all of its customers, disabled and non-disabled alike.[3]   Thus, Redbox cannot escape its obligation to provide auxiliary aids and service by claiming closed captioned DVDs are special or accessible goods.

---

[2] *See* 28 C.F.R. § 36.307(a) (stating, "[t]his part does not require a public accommodation to alter its inventory to include accessible or special goods that are designed for, or facilitate use by, individuals with disabilities.")

[3] This is because unlike open captions are visible to all viewers and cannot be turned off, closed captions are hidden content which only appears when a viewer activates a button to turn them on. Plaintiff seeks only closed captions.

*Finally*, Plaintiff's state and federal disability claims do not impinge on Redbox's free speech rights. Redbox incorrectly asserts that because the content of the movies it distributes are fully protected by the First Amendment, its business activities are also fully protected speech. However, while speech may be shown in many forms, such as burning a flag or draft registration card, the critical aspect of the asserted speech is substantial communicative intent and impact. *See e.g. Connick v. Myers* 461 U.S. 138, 145, (1983); *Smith v. Goguen* 415 U.S. 566, 586 (1974). Redbox's refusal to provide closed captioned movies does not constitute free speech or an act in furtherance of free speech. Redbox's business decision to carry only the most marketable films is driven by profit and is not an act of editorial discretion. Further, even if requiring Redbox to carry closed captioned DVDs burdens speech at all, it is at most a content neutral restriction,[4] narrowly tailored to serve a significant governmental interest, preventing discrimination and ensuring equal access to the deaf and hearing-impaired.

For these reasons and those set forth below, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss.

## II.   LEGAL STANDARD

In ruling on a Federal Rule of Civil Procedure "12(b)(6) motion, the court may not decide disputed fact issues. Rather, the court must assume all material facts contained in the complaint are true." *Davis v. Monroe City. Bd. Of Educ.*, 526 U.S. 629, 119 S.Ct. 1661 (1999). The court must also indulge all inferences in favor of the plaintiff. *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996). The court's task is simply to determine whether the plaintiff's complaint is legally sufficient to state a claim for relief. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir.2001). The

---

[4] *See Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network* (hereinafter, "*CNN*"), 742 F.3d 414, 431 (9th Cir. 2014); *Gottfried v. FCC*, 655 F.2d 297, 311 n.54 (D.C. Cir. 1981), rev'd in part on other grounds, 459 U.S. 498 (1983); *Motion Picture Ass'n of Am., Inc. v. FCC*, 309 F.3d 796, 803 (D.C. Cir. 2002).

court should dismiss under Federal Rule of Civil Procedure 12(b)(6) only if the court can determine to a certainty that the plaintiff cannot prove any set of facts that would entitle him to relief under the allegations in the complaint. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984); *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957). This standard is intended to be stringent and exacting because Federal Rule of Civil Procedure 12(b)(6) motions are strongly disfavored.

## III. PLAINTIFF HAS SUFFICIENTLY ALLEGED REDBOX DISCRIMINATED AGAINST HIM BECAUSE OF HIS DISABILITY

Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). A plaintiff may establish discrimination in one of several ways, including:

> (ii) a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations; [and] (iii) a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182 (b)(2)(A)(ii)-(iii). Plaintiff's SAC relies on the above-cited provisions of the ADA and provides the factual allegations to support them. At this nascent stage in the litigation, Federal Rule of Civil Procedure 8 requires only that plaintiff allege the basic elements of his claim: (1) that he is disabled within the meaning of the ADA; (2) that defendant is a private entity which owns, leases or

1    operates a place of public accommodation; and, (3) that he was denied public
2    accommodations by the defendant because of his disability. 42 U.S.C. § 12182(a) &
3    (b); *Molski v. M J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). Plaintiff adequately
4    alleges each of the requisite elements of his Title III claim. Plaintiff claims that he is
5    "disabled and therefore a member of a protected class under the ADA." (SAC ¶¶ 10,
6    57). Plaintiff also claims that Redbox's "brick and mortar" kiosks are places of public
7    accommodation within the meaning of 42 U.S.C. § 12181(7)(E)-(F) (covering "sales
8    or rental establishments" and "service establishments."). (SAC ¶¶ 8, 26, 58). Finally,
9    Plaintiff alleges that Redbox has discriminated against him because of his disability
10   by refusing to provide closed captioned DVDs. (SAC ¶¶ 7-8, 28, 33-34, 62, 67-68).
11   These pleadings, along with the other allegations in the SAC satisfy the liberal
12   pleading requirements of Federal Rule of Civil Procedure 8. Therefore, Redbox's
13   Motion to Dismiss should be denied.

14        **A.    Access Under the ADA is Not Limited to Physical Access**
15        Redbox concedes that Plaintiff is disabled. (*See* Motion 2). Redbox also
16   concedes that its automated kiosks are places of public accommodation. (*See* Motion
17   5). Redbox further concedes that "uncaptioned DVDs cannot be as fully enjoyed by
18   Plaintiff as those who are not disabled" (*Id.*). Lastly, Redbox concedes that the DVDs
19   and DVD rental services it provides are "goods and services" as those terms are
20   defined by the ADA. (Motion 4). Yet having conceded to nearly all of the requisite
21   elements of a valid Title III claim, Redbox contends Plaintiff's ADA claim should be
22   dismissed because he was not denied *physical* access to Redbox's kiosks. (Motion 4-
23   5). Essentially, Redbox argues that all Title III of the ADA intended to accomplish
24   was to ensure physical access for those with mobility related disabilities, but this is
25   simply not the case.

26        Contrary to Defendant's assertion, "access" under Title III of the ADA refers
27   not only to physical access, but also the opportunity to make the physical access
28   meaningful. *See* 42 U.S.C. § 12182(a). To limit "access" to mere physical access

would effectively exclude deaf and hard of hearing individuals from the class of people intended by the ADA to be brought "into the mainstream of society." House Report on the ADA (May 14, 1990) (hereinafter, "Report") H.R. Rpt. 101-485(II) at 35. However, they were not excluded from the protections of the ADA. Rather, they were expressly included, as the ADA defines "disability" to include the deaf and hard of hearing. *See* 42 U.S.C. § 12102. Further, by mandating the provision of auxiliary aids and services, including captioning, the ADA recognizes that the type of access deaf and hard of hearing individuals require is communication access. *See* 42 U.S.C. § 12103, 42 U.S.C. § 12182; *see also* 28 C.F.R. § 36.303(b)(1). Accordingly, Redbox's Motion to Dismiss Plaintiff's ADA claim on the grounds that he was not denied *physical* access to its kiosks should be denied.

## B.    Redbox's DVDs Are Available at its "Brick and Mortar" Kiosks

Redbox acknowledges that a claim for violation of the ADA arises where intangible barriers restrict a disabled person's ability to enjoy the goods, services and privileges of a place of public accommodation. However, relying primarily on *Stern v. Sony Corp.* (hereinafter, "*Stern*"), No. CV 09-7710 PA (FFMx), 2010 WL 8022226 (C.D. Cal. Feb. 8, 2010), Redbox contends that Plaintiff cannot establish a sufficient "nexus" between the enjoyment of Redbox's goods and a place of public accommodation. (Motion 6-7). Redbox's contention lacks merit. *Stern* is manifestly distinguishable from the facts here where Plaintiff's claims are directly connected to Redbox's "brick and mortar" kiosks.

In *Stern*, the plaintiff alleged that he had been denied equal enjoyment of video games manufactured by Sony due to a visual processing impairment which limited his ability to find objects in the game. The *Stern* court noted that "the Ninth Circuit has interpreted 'place of public accommodation' to require 'some connection between the good or service complained of and an actual physical place.'" *Stern*, 2010 WL 8022226, *3 (citing *Weyer v. Twentieth Century Fox Film Corp.* (hereinafter, "*Weyer*"), 198 F.3d 1104, 1114 (9th Cir. 2000). Thus, the court held that to the extent

the plaintiff was suing Sony as a manufacturer of video games, Sony was not a "place of public accommodation" within the meaning of the ADA. *Stern*, 2010 WL 8022226, *3. The court also rejected the plaintiff's attempt "to transform his claim against Sony, as the manufacturer of products, into an action against a 'place of public accommodation,'" by asserting that the particular visual processing problems that prevented him from fully enjoying the video games also deprived him of full enjoyment of video game conventions organized by Sony. *Id*. The Court found this connection too tenuous to support a cause of action under the ADA. *Id*. at *4.

Here, and unlike *Stern,* Plaintiff has alleged a direct connection between Redbox's goods and services and "actual physical places." (*See* SAC at ¶¶ 3, 6, 8, 24, 28, 32-24, 58, 60-62, 64-65, 68). As set forth above, the parties do not dispute that Redbox's kiosks are places of public accommodation. The parties also do not dispute that Redbox's movies and movie rental services are goods and services within the meaning of the ADA. In short, this case is a far cry from cases like *Stern*, where the nexus between the challenged goods and services and a place of public accommodation is too tenuous to support a cause of action under the ADA.

### C. Plaintiff has Sufficiently Alleged Discrimination Based on Redbox's Failure to Provide Auxiliary Aids and Services

Since it is undisputed that Plaintiff is disabled and that Redbox's kiosks are places of public accommodation, Plaintiff's ADA claim turns on the third element: whether Redbox has discriminated against Plaintiff by refusing to provide auxiliary aids and services. Redbox concedes that "uncaptioned DVDs cannot be as fully enjoyed by Plaintiff as those who are not disabled." (Motion at p. 5). However, again relying primarily on the district court's opinion in *Stern*, Redbox asserts that Plaintiff cannot argue it is required to "make 'auxiliary aids and services' available when Plaintiff faced no communication barriers in using the kiosk itself." (Motion 9).

Redbox's contention fails because it relies on its faulty interpretation of the ADA as requiring only physical access. Redbox's contention also fails because it

disregards Title III's unequivocal mandate requiring the provision of auxiliary aids and services to avoid discriminating against persons with disabilities. 42 U.S.C. § 12182(b)(2)(A)(iii). As explained above, Title III defines "discrimination" to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services ...." 42 U.S.C. § 12182(b)(2)(A) (iii); *see also* 28 U.S.C. § 36.303. Closed captions are clearly auxiliary aids and services; the ADA describes captioning as an "effective method[] of making aurally delivered information available to individuals who are deaf or hard of hearing." 28 C.F.R. § 36.303(b)(1); *see* 42 U.S.C. § 12103(1)(A)-(B). Thus, Redbox has an affirmative obligation to provide auxiliary aids and services, including captioning, to ensure that aural information is effectively communicated to deaf and hard of hearing individuals.

Redbox's position also lacks merit because it is founded upon a mischaracterization of the court's holding in *Stern*. (*See* Motion 8-9). Redbox contends that the Stern court rejected the plaintiff's ADA claim because he sought auxiliary aids and services to "fully enjoy the video games." (Motion 9). Rather, it was the absence of a connection to an actual physical location that drove the court's holding. Thus, in dismissing the plaintiff's claims, the court explained that:

> [t]he problem with the plaintiff's assertion is that he does not seek an auxiliary aid or service to foster communication at a place of public accommodation ***or to take full advantage of the goods, services, and privileges available at the conventions***, but to fully enjoy the video games, which as the Court has already concluded, ***are not sufficiently connected to a place of public accommodation***.

*Stern*, 2010 WL 8022226, *4 (emphasis added). The court cautioned that "[t]o hold otherwise [in the absence of a connection to place of public accommodation] would create potential liability under the ADA for manufacturers of all manner of products if those manufacturers failed to make available auxiliary aids allowing the entire

1    panoply of individuals with disabilities the full enjoyment of their products." *Id.*

2        Here, unlike *Stern*, Plaintiff has specifically alleged that he seeks an auxiliary

3    aid ***to take full advantage of the goods, services, and privileges available at Redbox's***

4    ***kiosks***. (*See* SAC at ¶¶ 3, 6, 8, 24, 28, 32-24, 58, 60-62, 64-65, 68).  Thus, Plaintiff

5    has alleged a ***direct*** and therefore sufficient connection between Redbox's goods and a

6    place of public accommodation. Unlike *Stern*, Plaintiff's claims create no risk of

7    extending potential liability under the ADA for manufacturers or other entities

8    unconnected to places of public accommodation.  Accordingly, *Stern* provides no

9    basis for dismissal of Plaintiff's ADA claim here.

10        Finally, Redbox's argument fails because it relies on an erroneous interpretation

11   of the ADA. *See* 42 U.S.C. § 12182(a) (providing "[n]o individual shall be

12   discriminated against on the basis of disability in the full and equal enjoyment of the

13   goods, services, facilities, privileges, advantages or accommodations of any place of

14   public accommodation."). As the statutory language makes clear, "[t]he [ADA]

15   "applies to the [goods and] services *of* a place of public accommodation, not the

16   [goods and] services *in* a place of public accommodation." *National Federation of the*

17   *Blind v. Target Corp.*, (hereinafter, "*Target*") 452 F. Supp.2d 946, 953 (N.D. Cal.

18   2006) (emphasis in original).  "To limit the ADA to discrimination in the provision of

19   [goods and] services occurring on the premises of a public accommodation would

20   contradict the plain language of the statute." *Id.* (citing *Rendon v. Valleycrest Prod.,*

21   *Ltd.*, 294 F.3d 1297, 1285 (11th Cir. 2002) (holding that a process for selecting

22   contestants for a game show that screened out the disabled was actionable under Title

23   III even though the process occurred outside the premises of the public

24   accommodation); *Stoutenborough v. National Football League,* (hereinafter,

25   "*Stoutenborough*") 59 F.3d 580, 582–83 (6th Cir. 1995) (concluding that Title III

26   covers "all of the services which the public accommodation offers"); *Weyer*, 198 F.3d

27   at 1115 (holding that "whatever goods or services the place provides, it cannot

28   discriminate on the basis of disability in providing ***enjoyment*** of those goods and

9

services") (emphasis added).

Title III refers to access as not only the ability to physically enter a place of public accommodation, but also the opportunity to make the physical access meaningful. *See* 42 U.S.C. § 12182(b)(1) (listing general prohibitions), *see also* 42 U.S.C. § 12182(b)(2) (listing specific prohibitions); *see also* H.R. Rpt. 101-485(II) at 104 (stating that "[i]n order not to discriminate against people with disabilities, however, certain steps must often be taken as well in order to ensure that an opportunity for individuals with disabilities to participate in the goods or services is effective and meaningful"). Thus, access, as it applies to Title III, is two-pronged. The first prong to access, set forth under Title III's general prohibitions, guarantees the physical ability to enter the place of public accommodation. *See* 42 U.S.C. § 12182(a). The second prong, set forth under Title III's specific prohibitions, asks whether the provision of an auxiliary aid or service will enable a person with a disability to fully and equally enjoy the goods and services offered by the place of public accommodation at a level comparable to everyone else. *See* 42 U.S.C. § 12182(b)(2)(A)(iii). If the answer to the second prong is yes, and the auxiliary aid or service has not been made available, then access has not been granted as a matter of law *even if that person has not been denied physical entrance*. *Id.*

Plaintiff has alleged that based on the limited availability of closed captioned goods, Redbox has denied him the aural access necessary to make his physical access to the kiosks meaningful. (SAC ¶ 28). To the extent Redbox argues that Plaintiffs' claims are not cognizable because he was provided physical access to its kiosks, Redbox's argument must fail. While the Ninth Circuit has indicated that a place of public accommodation is a physical space, Redbox's "attempt to bootstrap the definition of accessibility to this determination, effectively reads out of the ADA the broader provisions enacted by Congress." *See Target*, 452 F. Supp.2d at 955. By failing to provide auxiliary aids and services, Redbox, as a matter of law, has not granted access to Plaintiff, even if he was not physically denied access to Redbox's

kiosks.

**D.   Plaintiff is not Required to Plead Redbox's Affirmative Defenses**

As discussed above, Plaintiff has adequately alleged a claim of discrimination under Title III by Redbox.  Nevertheless, Redbox erroneously contends that the Court should dismiss Plaintiff's ADA claim because he failed to allege that (1) he requested a modification of a Redbox policy, practice or procedure; (2) necessary to accommodate his disability and (3) Redbox refused to make the modification. (Motion 9).  Redbox cites no authority for its contention that a plaintiff alleging violation of the ADA must plead that he requested a reasonable modification to a policy, practice, or procedure of a place of public accommodation. This is because the ADA creates an affirmative duty on places of public accommodation to provide "reasonable modification or accommodations" by defining discrimination to include,

> *a failure to make reasonable modifications* in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, *or accommodations to individuals with disabilities*.

42 U.S.C. § 12182(b)(2)(A)(ii) (emphasis added).  Thus, Plaintiff has satisfied the pleading requirements at this stage in the litigation by alleging that he is disabled within the meaning of the ADA and that he was denied access to a public accommodation because of his disability.[5]

Redbox further contends that in order to state a claim for relief under the ADA, Plaintiff must set forth factual allegations sufficient to support the affirmative defenses of fundamental alteration and undue burden. (*See* Motion 10 (stating that Plaintiff's allegation that "providing closed captions…would not fundamentally alter the nature of Redbox's DVD rental business, nor would it pose an undue burden on this flourishing company,"…"amounts to nothing more than a legal conclusion and is

---

[5] Further, despite Redbox's assertion, the SAC does in fact allege that Plaintiff *repeatedly* requested that Redbox provide closed captioned DVDs, but Redbox failed or refused to do so.  (*See* SAC ¶¶ 33-34, 42-43, 65, 67).

11

1  not sufficient to state a claim for relief."). Once again, Redbox misapprehends the
2  requisite elements of a valid Title III claim.  Plaintiff is not required to plead Redbox's
3  potential affirmative defenses. To the contrary, the ADA specifically puts that
4  responsibility on Defendant. *See* 42 U.S.C. § 12182(b)(2)(A)(ii) (providing "…***unless***
5  ***the entity can demonstrate*** that making such modifications would fundamentally alter
6  the nature of such goods, services, facilities, privileges, advantages, or
7  accommodations") (emphasis added); *see also* 42 U.S.C. § 12182(b)(2)(A)(iii)
8  (providing "…***unless the entity can demonstrate*** that taking such steps would
9  fundamentally alter the nature of the good, service, facility, privilege, advantage, or
10  accommodation being offered or would result in an undue burden.") (emphasis
11  added). Plaintiff has sufficiently established a prima facie claim under the ADA by
12  alleging that he is disabled and that Redbox denied him public accommodations
13  because of his disability. (See SAC ¶¶ 7-8, 10, 26, 28, 33-34, 57-58, 62, 67-68).

14  Finally, Redbox's reliance on *Lentini v. California Center for the Arts,*
15  *Escondido* (hereinafter, "*Lentini*") 370 F.3d 837 (9th Cir. 2004) and *Fortyune v. Am.*
16  *Multi-Cinema, Inc.* (hereinafter, "*Fortyune*"), 364 F.3d 1075 (9th Cir. 2004) is
17  misplaced, as neither case is applicable to determinations made at the pleading stage.
18  *Lentini* is an appeal from a bench trial and *Fortyune* is an appeal from a motion for
19  summary judgment. Thus, the courts in those cases had the benefit of evaluating
20  factual evidence submitted by the parties in determining whether the modifications
21  sought by the plaintiffs were necessary and reasonable and whether, in light of the
22  circumstances, they constituted a fundamental alteration or undue burden.  See
23  generally, *Lentini*, *Fortyune*. In fact, the courts in both cases noted that such inquiry is
24  factual in nature. *See Lentini*, 370 F.3d at 844 (stating, "the determination of what
25  constitutes reasonable modification is highly fact-specific, requiring case-by-case
26  inquiry."); *see* also *Fortyune*, 364 F.3d at 1083 (providing, "… it is clear that the
27  determination of whether a particular modification is 'reasonable' involves a fact-
28  specific, case-by-case inquiry that considers, among other factors, the effectiveness of

12

the modification in light of the nature of the disability in question and the cost to the organization that would implement it."). Therefore, the determination of whether captioning is a reasonable modification or amounts to a fundamental alteration or undue burden is improper at the pleading stage.

### E.   Closed Captioned DVDs are Not Special Goods

Redbox has not raised the affirmative defenses of fundamental alteration or undue burden. Rather Redbox argues that it should be excused from providing the equal enjoyment of its goods and services, because the auxiliary aids and services provision does not require it to "modify" its inventory. *See* 28 C.F.R. § 36.307(a) (stating, "[t]his part does not require a public accommodation to alter its inventory to include accessible or special goods that are designed for, or facilitate use by, individuals with disabilities."). However, because the DOJ has stated that "[t]he rule enunciated in Section 36.307 is consistent with the 'fundamental alteration' defense," Plaintiff has addressed that defense below. *See* 28 C.F.R. Part 36, Appendix B to the DOJ's ADA Regulations at 28 C.F.R. Part 36, Subpart C, discussion of Section 36.302, published July 26, 1991.

The term "fundamental alteration" is not explicitly defined in the ADA or its implementing regulations. However, the Title III Technical Assistance Manual defines fundamental alteration as "a modification that is so significant that it alters the essential nature of the goods, services, facilities, privileges, advantages, or accommodations offered."[6] The Ninth Circuit has held that whether an accommodation "fundamentally alters" the nature of a good or service is "an intensively fact-based inquiry." *Lentini v. California Center for the Arts, Escondido* (hereinafter, "*Lentini*") 370 F.3d 837, 845 (9th Cir. 2004). Therefore, whether

---

[6] The Americans with Disabilities Act, Title II Technical Assistance Manual (1993), http://www.ada.gov/taman3.html (stating that "[t]his technical assistance manual addresses the requirements of title III of the [ADA] ... to assist individuals and entities in understanding their rights and duties under the Act").

13

requiring Redbox to provide closed captions would fundamentally alter the nature of the goods and/or services Redbox offers, is an issue that is inappropriate for resolution on a motion to dismiss. At this stage, where discovery has not yet commenced, the inquiry is whether it appears beyond a doubt that the non-movant can prove no set of facts in support of its claim which would entitle it to relief. *See Hishon v. King & Spalding*, 467 U.S. at 73. Here, Plaintiff has alleged and Redbox has acknowledged that its inventory already includes "many titles that are closed-captioned." (*See* Motion 4; *see also* SAC ¶¶ 28, 30, 62). Therefore, it is likely that plaintiff will be able to show that requiring Redbox to provide closed captioned DVDs would not fundamentally alter the nature of the goods and services it provides.

Although Redbox acknowledges that it already provides "many" closed captioned DVDs to all of its customers, Redbox attempts to persuade this Court that closed captioned movies are "special goods" designed specifically for the disabled. In support of its effort Redbox compares captioned DVDs to Braille books. However, Redbox's false analogy fails.

Braille is a tactile writing system used by the blind and visually impaired. Reading Braille requires special training and thus, having never had the need to learn, the vast majority of sighted individuals cannot read books imprinted with Braille. Based on the limited nature of the market for Braille books, they are not often found on the shelves of conventional bookstores. Braille books, therefore, are truly special goods as they are specifically designed for use by the blind and are of no use to the vast majority of sighted individuals.

On the other hand, closed-captioned movies, including those that Redbox already "*does* make available to its customers," are not special goods designed for or to facilitate use by individuals with disabilities. Instead, the closed captioned DVDs Redbox provides are the exact same DVDs it provides to its non-disabled customers. This is because closed captions are hidden content which only appear when activated by the viewer. Accordingly, closed captioned DVDs are not special goods.

Nevertheless, Redbox argues that because in 1991 the DOJ identified "closed-captioned video tapes" as an example of accessible goods, Redbox should be excused from providing closed captioned DVDs now. *See* 28 C.F.R. § 36.307(c) (identifying, by way of example, closed-captioned video tapes).  As this Court is aware, "video tapes" are a far cry from DVDs and streaming videos.  The DVD was not even introduced in the United States until 1997, seven years after the enactment of the ADA.[7]  Undoubtedly, in this day and age, closed captioning has become more mainstream, and the process of closed captioning more advanced.

The legislative history of the ADA indicates that Congress intended that the entities required to comply with the ADA be subject to the requirement to keep pace with the latest technology available, whenever feasible, if it meant that accessibility would be ensured.  H.R. Rpt. 101-485(II) at 108.  This reflects the understanding that, while the level of technology present at the time of enactment of the ADA might not allow for access, the door to access is not forever shut especially when some future technology enabling access arises.  H.R. Rpt. 101-485(II) at 108 (stating that "[t]he Committee wishes to make it clear that technological advances can be expected to further enhance options for making meaningful and effective opportunities available to individuals with disabilities. Such advances may require public accommodations to provide auxiliary aids and services in the future which today would not be required because they would be held to impose undue burdens on such entities").  Accordingly, Redbox cannot escape the ADA's requirement to provide the disabled with full and equal enjoyment of its goods by claiming an exemption based on 28 C.F.R. § 36.307.

Further, even if closed captioned DVDs are special goods, Redbox was required, but failed, to provide them upon Plaintiff's repeated requests. (*See e.g.* SAC

---

[7] Jen Chaney, *Parting Words for VHS Tapes, Soon to be Gone With the Rewind*, The Washing Post, August 25, 2005, available online at: http://www.washingtonpost.com/wp-dyn/content/article/2005/08/26/AR2005082600332.html , accessed Mar. 24, 2014.

15

¶¶ 44-46).   As a place of public accommodation, Redbox is required to order accessible or special goods at the request of an individual with disabilities, if, in the normal course of its operation, it makes special orders on request for unstocked goods, and if the accessible or special goods can be obtained from a supplier with whom the public accommodation customarily does business.  *See* 28 C.F.R. 36.307(b). Whether Redbox normally makes special orders for unstocked goods and whether such goods can be obtained from its suppliers are questions of fact which cannot be answered at this stage in the litigation where discovery has not yet commenced.

Redbox also contends that the district court's opinion in *Torres v. AT&T Broadband, LLC*, (hereinafter, "*Torres*") 158 F. Supp. 2d 1035 (N.D. Cal. 2001), absolves it of its obligation to provide auxiliary aids and services.  However, *Torres*, like *Stern*, considered a claim for violation of Title III of the ADA absent any connection to a place of public accommodation.  *See Torres*, 158 F. Supp. 2d at 1035.  In *Torres*, the plaintiff claimed that AT&T discriminated against him because the channel menu for its digital cable service was inaccessible to the blind and visually impaired. *Id.*   The *Torres* court rejected the plaintiff's claim finding "neither the digital cable system nor its on-screen channel menu can be considered a place of public accommodation within the meaning of the ADA."  The court continued noting,

> [t]he defendants' digital cable system is installed in the plaintiff's home. The plaintiff does not have to travel to some physical place, open to the public, in order to experience the benefits of the defendants' digital cable system. He simply turns on his television set and has automatic access to the sounds and images provided by the defendants' service.

*Id.* at 1038.

Here, each time Plaintiff wishes to rent a DVD from Redbox, he must travel to a physical place open to the public in order to experience the benefits of Redbox's DVD goods and services.  (*See* SAC ¶ 11, 24, 26, 41-42).  These facts, as alleged in the SAC, establish a connection between Redbox's goods and services and a place of public accommodation. Therefore, under *Torres*, Plaintiff has sufficiently alleged the

required "nexus" to support a claim for discrimination under the ADA.

## IV.    PLAINTIFF HAS PLED HIS STATE LAW CLAIMS

Because Plaintiff has sufficiently alleged a claim for violation of the ADA, Plaintiff's claims for violation of the California Unruh Civil Rights Act and Disabled Persons Act are sufficient as a matter of law. *See* Civ. Code § 51(f) ("[a] violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (P.L. 101-336) shall also constitute a violation of this section."); *Bass v. County of Butte,* 458 F.3d 978, 982 (9th Cir.2006); *see also* Civ. Code § 54(c) (that "[a] violation of the right of an individual under the Americans with Disabilities Act of 1990 (Public Law 101–336) also constitutes a violation of this section.").

## V.    PLAINTIFF'S DISABILITY CLAIMS DO NOT VIOLATE THE FIRST AMENDMENT

### A.    Redbox's Inventory Is Not Expressive Speech

Redbox incorrectly asserts that because the content of the movies it distributes are fully protected by the First Amendment, its business activities are also fully protected speech.  Redbox acknowledges that "[it] is solely a distributor" (Motion 15), yet contends its inventory of new release movies is expressive speech subject to "the highest First Amendment protection" applicable to art and literature. (*See* Motion 13 (citing *Brown v. Entm't Merchants Assn.* (hereinafter, "*Brown*"), 131 S. Ct. 2729, 2733 (2011). To be clear, Redbox is not a producer or creator of films. Redbox does not communicate ideas and social messages through literary devices such as characters, dialogue, plot, and music. *See Brown* 131 S.Ct. at 2733.  Rather, Redbox indiscriminately stuffs its automated kiosks with the "newest and most popular new movies"[8] and claims this is an act of expressive speech. Obviously, Redbox cites no authority for this contention, as none can be found.  As set forth herein, the fact that Redbox distributes products which implicate expressive speech does not automatically

---

[8]   See   Redbox   Media   Center,   Redbox   Fun   Facts,   available   at http://www.redbox.com/facts, accessed Mar. 21, 2014.

render Redbox's retail functions entitled to the same protections afforded expressive speech.

Protected speech may be shown in many forms. *See e.g. Texas v. Johnson* 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (burning of American flag); *Tinker v. Des Moines Indep. Community Sch. Dist*. 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) (wearing black armbands); *United States v. O'Brien* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) (burning draft registration card). With the myriad illustrations of protected speech illustrations, whether a given activity constitutes "speech" represents a threshold question in every First Amendment case. See *Texas v. Johnson*, 491 U.S. at 403. The Supreme Court has consistently focused on the expressive aspect of the asserted speech. See e.g. *Connick v. Myers* 461 U.S. 138, 145, (1983) ("[t]he First Amendment 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.' "); *see also Pickering v. Board of Educ*. 391 U.S. 563, 568 (1968) (the public's interest in "free and uninhibited debate on matters of public importance" is "the core value of the Free Speech Clause."). Thus, expression and communication are the critical attributes of protected speech.  *See Smith v. Goguen* 415 U.S. 566, 586 (1974) White, J., concurring (stating, "[t]he First Amendment, of course, applies to speech and not to conduct without substantial communicative intent and impact.").

Redbox's refusal to provide closed captioned movies does not constitute free speech or an act in furtherance of free speech such that Defendant's motion to dismiss should be denied.  Redbox acknowledges that unlike the First Amendment cases it relies on, it is not the creator and distributor of expressive content, but rather solely the distributor.  Redbox's business decision to carry only the most marketable films is not an act of editorial discretion, but rather is driven by profit. Accordingly, Defendant's Motion to Dismiss should be denied because no free speech issues are raised by Plaintiff's claims for closed captioning.

/ / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.      Even if a Captioning Requirement Does Regulate Speech, it is At Most Content-neutral and Narrowly Tailored to Serve Important Governmental Interests**

If this Court concludes that requiring closed captioning burdens speech at all, then requiring captioning is at most a content neutral restriction.  Laws that do not actually favor or disfavor, or have the purpose of favoring or disfavoring, particular viewpoints or ideas are content neutral. *Turner Broadcasting System, Inc. v. F.C.C.*, 512 U.S. 622, 636 (1994).  "[L]aws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are in most instances content neutral." *Id*. at 643.  Content-neutral regulations will be sustained if the means chosen does not "burden substantially more speech than is necessary to further the government's legitimate interests." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989).

To the extent the ADA regulates Redbox's speech by requiring it to provide closed captioned movies, it is content neutral because the law does not actually favor or disfavor particular ideas or viewpoints.  Requiring closed captioned movies is also content neutral because doing so does not alter, compel or regulate speech.  *See Gottfried v. FCC*, 655 F.2d 297, 311 n.54 (D.C. Cir. 1981), rev'd in part on other grounds, 459 U.S. 498 (1983) (concluding "that any requirement to provide programming with closed captioning would not violate the First Amendment"); *Motion Picture Ass'n of Am., Inc. v. FCC*, 309 F.3d 796, 803 (D.C. Cir. 2002) (finding captioning does not run afoul of the First Amendment because it is merely a "straight translation of dialogue into text.");   *see also In re Implementation of Video Description of Video Programming*, 15 FCC Rcd. 15230, 15255 (Jan. 18, 2001) (stating "any requirement to provide programming with closed captioning would not violate the First Amendment.").  Moreover, the Ninth Circuit recently stated that closed captioning requirements as permissible under the First Amendment stating, "[t]he captioning requirement GLAAD seeks … is a content-neutral injunction that requires CNN to provide closed captioning on videos posted to CNN.com." *CNN*,

19

742 F.3d at 431.

Nevertheless, Redbox argues that construing the ADA to require captioning impermissibly burdens its free speech rights and fails under intermediate scrutiny. Under this test, as formulated in *Ward v. Rock Against Racism,* 491 U.S. 781, 798-799 (1989), time, place, and manner regulations will survive constitutional scrutiny, provided that they are "justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Id.* at 800.

It is Plaintiff's position that interpreting the ADA to permit a captioning requirement as a remedy for alleged violations of the statute would advance the government's legitimate and substantial interests in preventing discrimination and ensuring equal access to the deaf and hearing-impaired. Plaintiff further contends that the captioning requirement he seeks is narrowly tailored to further these interests by ensuring that the goods and services offered by Redbox are fully and equally enjoyable to persons who are deaf or hard of hearing. However, at this preliminary stage in the litigation, the parties have not had the opportunity to present evidence as to whether imposing a content-neutral captioning requirement under the ADA would burden "substantially more speech than is necessary to further the government's legitimate interests." *See Ward v. Rock Against Racism,* 491 U.S. 781, 799 (1989). Further, on a motion to dismiss, the court must indulge all inferences in favor of the Plaintiff. *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996). Accordingly, Plaintiff's ADA claims have at least the "minimal merit" necessary to survive Redbox's free speech challenge at this juncture.

/ / /

/ / /

/ / /

/ / /

Opposition to Defendant Redbox Automated Retail, LLC's Motion to Dismiss
Case No. SACV13-01387-DOC (RNBx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VI.    CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests that Redbox's Motion to Dismiss be denied.

DATED: March 24, 2014                          **MARLIN & SALTZMAN, LLP**

By: /S/ Christina A. Humphrey
                                                          Christina A. Humphrey, Esq.
                                                          Leslie H. Joyner, Esq.
                                                          Attorneys for Plaintiff

Opposition to Defendant Redbox Automated Retail, LLC's Motion to Dismiss
Case No. SACV13-01387-DOC (RNBx)