O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1387-DOC (RNBx)                     Date:  May 14, 2014

Title: FRANCIS JANCIK v. REDBOX AUTOMATED RETAIL, LLC, ET AL.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

Julie Barrera                                  Not Present
Courtroom Clerk                           Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFF:      ATTORNEYS PRESENT FOR DEFENDANT:
None Present                                   None Present

**PROCEEDINGS (IN CHAMBERS):   ORDER GRANTING EFENDANT'S**
**MOTION TO DISMISS [31] [32]**

Before the Court are two motions: Defendant Redbox Automated Retail, LLC's ("RedBox Retail's") Motion to Dismiss ("Retail Motion") (Dkt. 32) and Defendants Verizon and Redbox Digital Entertainment Services, LLC's (together, "Redbox Digital's") Motion to Dismiss ("Digital Motion") (Dkt. 31).

The Court finds this matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78; *see also* C.D. Cal. R. 7-15.  Having considered the moving, opposing, and replying papers, and all exhibits attached thereto, the Court GRANTS in part and DENIES in part the Retail Motion, and GRANTS the Digital Motion.

## I.  BACKGROUND

### A.  Redbox Retail

Redbox Retail owns and operates more than 42,000 kiosks, which are self-service automated machines that allow customers to rent and return DVDs by using a touchscreen interface.  Second Am. Compl. ("SAC") ¶ 24.  Redbox Retail's kiosks carry only a limited number of closed-captioned DVDs.  *Id.* ¶ 28.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1387-DOC (RNBx)                                      Date: May 14, 2014

Plaintiff Francis Jancik ("Mr. Jancik") is an individual who is deaf. *Id.* ¶ 10. He patronizes the Redbox Retail kiosks and on multiple occasions in 2013, he requested that Redbox Retail make more closed-captioned video content available in its kiosks to accommodate his disability. *Id.* ¶ 33. Redbox Retail failed to do so. *Id.*

### B. Redbox Digital

Redbox Digital offers "Redbox Instant" through its internet website, www.redboxinstant.com, which provides streaming popular entertainment content. *Id.* ¶¶ 4, 5. Consumers can access the content either by paying a monthly subscription fee, or a fee for each individual movie or television show. *Id.* The majority of the content available on Redbox Instant is not closed captioned. *Id.* ¶ 28.

The Redbox Instant subscription bundles services from both Redbox Digital and Redbox Retail, offering customers "a high value subscription package that combines unlimited streaming of thousands of popular movies, including titles from premium network EPIX, with four one-night credits per month for the latest movie releases on DVD at Redbox kiosks." *Id.* ¶ 25 (quoting a press release dated December 12, 2012).

Mr. Jancik "has visited [Redbox Digital's] website and is aware of the limited availability [of] streaming videos that are closed captioned." *Id.* ¶ 12. Consequently, at all relevant times, he has been "deterred from patronage of Defendant [Redbox Digital]'s services." *Id.* If Redbox Digital did provide such closed captioning, then Mr. Jancik would subscribe. *Id.*

On January 14, 2014, Mr. Jancik filed a Second Amended Complaint—the operative complaint for the motions to dismiss—against both Redbox Retail and Redbox Digital, alleging violations of the Americans with Disabilities Act ("ADA"), California's Unruh Act, California's Disabled Persons Act ("DPA"), California's Consumer Legal Remedies Act ("CLRA"), California's False Advertising Law ("FAL"), and California's Unfair Competition Law ("UCL"). *See generally*, SAC. Both Redbox Retail and Redbox Digital filed motions to dismiss, and the Court considers them in turn.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1387-DOC (RNBx)                                    Date: May 14, 2014

speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, this court accepts as true a plaintiff's well-pled factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). For example, the Court can consider the complaint but not information in the moving papers when evaluating the complaint's sufficiency. *See Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993) ("Review is limited to the complaint; evidence outside the pleadings…cannot normally be considered in deciding a 12(b)(6) motion.") (internal quotation marks and citations omitted). However, under the incorporation by reference doctrine, the court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002).

Additionally, Federal Rule of Evidence 201 allows the court to take judicial notice of certain items without converting the motion to dismiss into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). The court may take judicial notice of facts "not subject to reasonable dispute" because they are either: "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (noting that the court may take judicial notice of undisputed "matters of public record"), *overruled on other grounds by Galbraith v. County of Santa Clara* 307 F.3d 1119, 1125-26 (9th Cir. 2002). The court may disregard allegations in a complaint that are contradicted by matters properly subject to judicial notice. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

Dismissal without leave to amend is appropriate only when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1387-DOC (RNBx)                                      Date: May 14, 2014

Page 4

if no request to amend was made).  Rule 15(a)(2) of the Federal Rules of Civil Procedure
states that leave to amend should be freely given "when justice so requires."  This policy
is applied with "extreme liberality."  *Morongo Band of Mission Indians v. Rose*, 893 F.2d
1074, 1079 (9th Cir. 1990).

## III.   ANALYSIS

### A. Redbox Retail's Motion to Dismiss

#### 1.  ADA Title III

Redbox Retail first moves to dismiss Mr. Jancik's claim under Title III of the
ADA.

Title III of the ADA prohibits discrimination against individuals with disabilities
in places of public accommodation, providing: "No individual shall be discriminated
against on the basis of disability in the full and equal enjoyment of the goods . . . of any
place of public accommodation by any person who owns . . . or operates a place of public
accommodation."  42 U.S.C. § 12182(a).

"Discrimination" under the ADA includes the denial of the opportunity for people
with disabilities to participate in programs or services.  *See* 42 U.S.C. §
12182(b)(1)(A)(i)–(iii).  To ensure that people with disabilities have full and equal
enjoyment of the goods and services of places of public accommodation, the ADA
requires "reasonable modification" of "policies, practices, and procedures" and the
provision of auxiliary aids, if necessary.  42 U.S.C. § 12182(b)(2)(A)(ii)–(iii).  The ADA
thus goes beyond some other anti-discrimination statutes, requiring that places of public
accommodation take affirmative steps to accommodate people with disabilities.  H.R.
Rep. No. 101-485, pt.2, at 104 (1990).

To prevail on an ADA Title III discrimination claim, "the plaintiff must show that
(1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity
that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was
denied public accommodations by the defendant because of her disability."  *Molski v.
M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007); *see also Weyer v. Twentieth Century
Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000) ("place of public accommodation"
requires "some connection between the good or service complained of and an actual
physical place").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1387-DOC (RNBx)                                    Date: May 14, 2014

     Mr. Jancik adequately asserts, and Redbox Retail does not dispute, that Mr. Jancik is "disabled and therefore a member of a protected class under the ADA." SAC ¶¶ 10, 57. Mr. Jancik also adequately asserts, and Redbox Retail does not dispute, that Redbox Retail's "brick and mortar" kiosks are places of public accommodation within the meaning of 41 U.S.C. § 12181(7)(E)–(F) (covering "sales or rental establishments" and "service establishments."). SAC ¶¶ 8, 26, 58. The crux of the Motion, then, is whether Redbox Retail denied Mr. Jancik public accommodations because of his disability. Under this prong, the parties dispute two issues: (1) whether the ADA regulates the content and characteristics of goods, and (2) whether stocking closed-captioned DVDs is covered under one of § 12182's implementing regulations, 28 C.F.R. § 36.307. The Court considers each issue in turn.

### a. Whether the ADA Regulates the Content and Characteristics of Goods

     Redbox Retail asserts that the ADA does not regulate the content or characteristics of goods offered at places of public accommodation. Mot. at 7. Instead, the ADA regulates *access* to the goods at the place of public accommodation. *Id.*

     Mr. Jancik responds that the ADA requires that physical access to goods must be meaningful. Pl's Opp'n at 5–10. Consequently, by mandating the provision of auxiliary aids and services, the ADA requires businesses to sell goods that carry auxiliary aids and services to ensure that the physical access is meaningful, and that closed captioning is an example of such an auxiliary aid. *Id.*

     The Court finds that the ADA does not regulate the content and characteristics of goods, in the manner that Mr. Jancik proposes. The core meaning of Title III, plainly enough, is that the ADA requires equal access to places of public accommodation—not equally valuable goods and services available at the public accommodation. *See, e.g.*, *Arizona Ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 671 (9th Cir. 2010) ("This language does not require provision of different goods or services, just nondiscriminatory enjoyment of those that are provided"); *Weyer*, 198 F.3d at 1115 ("The ordinary meaning of [Title III] is that whatever goods or services the place provides, it cannot discriminate on the basis of disability in providing enjoyment of those goods and services, just nondiscriminatory enjoyment of those that are provided. Thus, a bookstore cannot discriminate against disabled people in granting access, but need not assure that the books are available in Braille as well as print.") (citing *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 613 (3d Cir. 1998); *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1387-DOC (RNBx)                                      Date: May 14, 2014

Page 6

Supp. 2d 946 (N.D. Cal. 2006) ("The purpose of the ADA's public accommodations requirements is to ensure accessibility to the goods offered by a public accommodation, not to alter the nature or mix of goods that the public accommodation has typically provided.").

Other courts have also similarly differentiated between access to a good and the good itself. *See, e.g.*, *Ball v. AMC Ent., Inc.*, 246 F. Supp. 2d 17, 24–25 (D.D.C. 2003). As one Court of Appeals has explained:

> The common sense of the statute is that the content of the goods . . . offered by a place of public accommodation is not regulated. A camera store may not refuse to sell cameras to a disabled person, but it is not required to stock cameras specially designed for such persons. Had Congress purposed to impose so enormous a burden on the retail sector of the economy and so vast a supervisory responsibility on the federal courts, we think it would have made its intention clearer and would at least have imposed some standards. It is hardly a feasible judicial function to decide whether shoe stores should sell single shoes to one-legged persons and if so at what price, or how many Braille books the Borders or Barnes and Noble bookstore chains should stock in each of their stores.

*Mutual of Omaha Ins. Co.*, 179 F.3d at 560; s*ee also PGA Tour, Inc. v. Martin*, 532 U.S. 661, 698 (2001) (Scalia, J., dissenting) ("disabled individuals must be given *access* to the same goods, services, and privileges that others enjoy . . . Title III 'does not require a public accommodation to alter its inventory to include accessible or special goods with accessibility features that are designed for, or facilitate use by, individuals with disabilities.'") (citing 28 C.F.R. § 36.307 (2000)) (emphasis in original).

In short, without more, Title III does not apply to the goods in a retailer's inventory. *See, e.g.*, *Mutual of Omaha Ins. Co.*, 179 F.3d at 560–61 (holding the same).

**b. Whether Closed-Captioned DVDs Are Covered Under 28 C.F.R. § 36.307**

The next issue is whether the ADA's implementing regulations require Redbox Retail to provide closed-captioned DVDs.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1387-DOC (RNBx)                              Date: May 14, 2014

According to 28 C.F.R. § 36.307(a), Title III does not require a place of public accommodation to "alter its inventory to include accessible or special goods that are designed for, or facilitate use by, individuals with disabilities."

Mr. Jancik asserts that closed-captioned DVDs are not "accessible or special goods" under 28 C.F.R. 36.307.  In support of this argument, he points out that while it is difficult to add closed-captioning to video cassettes—which are expressly identified as "accessible or special goods"—technological advances have made adding closed-captioning on DVDs a much simpler task.  *See* Pl's Opp'n at 15–16; *see also* H.R. Rep. 101-485, pt.2, at 108 (1990) ("The Committee wishes to make it clear that technological advances can be expected to further enhance options for making meaningful and effective opportunities available to individuals with disabilities.  Such advances may require public accommodations to provide auxiliary aids and services in the future which today would not be required because they would be held to impose undue burdens on such entities.").

There is little guidance as to what modern technologies constitute "accessible or special" goods.  "Access" is defined as an "opportunity or ability to enter, approach, pass to and from, or communicate with." Black's Law Dictionary 14 (9th ed. 1999).  "Accessible" is similarly defined.  *See, eg.*, *Accessible Definition*, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/accessible (last visited Apr. 18, 2014).  Here, closed-captioned DVDs provide individuals with disabilities with access to video content, within the ordinary meaning of "access."  The fact that it is now easier to make a product "accessible" does not alter the plain meaning of the regulation.  Mr. Jancik's argument is more properly directed to the agency charged with promulgating the regulations, the U.S. Department of Justice.  Accordingly, the Court plainly construes the existing regulation and finds that closed-captioned DVDs are "accessible" goods within the meaning of § 36.307.

The inquiry, however, does not end here.  28 C.F.R. § 36.307(b) also provides that a place of public accommodation shall "order accessible or special goods at the request of an individual with disabilities, if, in the normal course of its operation, it makes special orders on request for unstocked goods, and if the accessible or special goods can be obtained from a supplier with whom the public accommodation customarily does business."  "For example, a clothing store would be required to order specially-sized clothing at the request of an individual with a disability, if it customarily makes special orders for clothing that it does not keep in stock, and if the clothing can be obtained from one of the store's customary suppliers."  28 C.F.R. pt. 36, App. C.  This does not mean that defendants can be liable under this prong of the regulation if they participate in *any*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1387-DOC (RNBx)                                  Date: May 14, 2014

kind of special ordering. *See* 28 C.F.R. pt. 36, App. C. Rather, the Department of Justice intended for § 36.307(b) to require special orders only of those particular types of goods for which a place of public accommodation normally makes special orders. *Id.* "For example, a book and recording store would not have to specially order Braille[] books if, in the normal course of its business, it only specially orders recordings and not books." *Id.*

In other words, a business that ordinarily takes special orders on unstocked DVDs must also take special orders on closed-captioned DVDs, if such DVDs can be obtained from a supplier with whom the business customarily does business. *See id.*; *see also* 28 C.F.R. § 36.307(c) (defining "accessible or special goods").

Over the course of 2013, Mr. Jancik made multiple requests that Redbox Retail make closed-captioned video content available. Redbox Retail concedes that it carries *some* closed-captioned DVDs; whether they were special orders is yet to be determined. Whether Redbox Retail normally takes special orders for DVDs and whether such goods can be obtained from its suppliers are questions of fact, which cannot be answered at this stage in the litigation when discovery has not yet commenced. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Thus, the Court cannot deny the ADA claim wholesale, and holds that Mr. Jancik has adequately stated a claim under 28 C.F.R. § 36.307 (b).

Accordingly, the Court GRANTS Redbox Retail's Motion to Dismiss Mr. Jancik's ADA claim, to the extent that it is predicated on assertions that either the ADA regulates the content or characteristics of goods offered at places of public accommodation or that 28 C.F.R. 36.307(a) does not apply to DVDs. However, the Court DENIES the Motion, to the extent that it is predicated on the assertion that Redbox Retail ordinarily accepts special orders in the regular course of its business.

## 2. Unruh Act

The Unruh Act states that individuals with disabilities are "entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). In 1992, the California legislature amended the Unruh Act to state that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code § 51(f). Thus, a plaintiff who pleads a violation of the ADA does not need to allege anything further in order to state a claim under the Unruh Act. *See Lentini v. California Cntr. for the Arts*, 370 F.3d 837, 847 (9th Cir. 2004).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1387-DOC (RNBx)                    Date: May 14, 2014

Since Mr. Jancik states a valid claim under the ADA—albeit, in a far more limited form than he hopes—he has stated a claim under the Unruh Act as well, and the Court need not reach Redbox Retail's challenges to Mr. Jancik's Unruh Act claim.

Therefore, the Court DENIES Redbox Retail's Motion to Dismiss the Unruh Act claim.

### 3. DPA

The Disabled Persons Act states that:

> Individuals with disabilities shall be entitled to full and equal access to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, and privileges of all common carriers, airplanes, motor vehicles, railroad trains, motorbuses, streetcars, boats, or any other public conveyances or modes of transportation (whether private, public, franchised, licensed, contracted, or otherwise provided), telephone facilities, adoption agencies, private schools, hotels, lodging places, places of public accommodation, amusement, or resort, and other places to which the general public is invited.

Cal. Civ. Code § 54.1(a)(1).  Similar to the Unruh Act, a violation of the ADA is a violation of the DPA.  *See Nat'l Fed'n of the Blind*, 452 F. Supp. 2d at 957–58 (holding the same).  Thus, the Court need not reach Redbox Retail's challenges to Plaintiff's DPA claim.

Therefore, the Court DENIES Redbox Retail's Motion to Dismiss the DPA claim.

### B. Redbox Digital's Motion to Dismiss

### 1.     Article III Standing

Redbox Digital first argues that "[b]y admitting he has not spent money on [Redbox Digital]'s programming, accessed programming, or actually seen a lack of captions, [Mr.] Jancik does not—and cannot—satisfy the fundamental requirement of Article III standing[.]"  Mot. at 6.  The Court disagrees.

A plaintiff has Article III standing if he has suffered an "injury in fact"—an invasion of a legally protected interest that is concrete and particularized, and actual or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1387-DOC (RNBx)                                      Date: May 14, 2014

imminent—there is a causal connection between the injury and the conduct complained
of, and the injury can be redressed by a favorable decision. *Lujan v. Defenders of
Wildlife*, 504 U.S. 555, 560-61 (1992). In the case of an alleged violation of the ADA,
the "injury in fact" requirement is satisfied by a showing that the plaintiff is "currently
deterred from attempting to gain access" to the place of public accommodation. *Pickern
v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1137-38 (9th Cir. 2002). "Once a
disabled individual has encountered or become aware of alleged ADA violations that
deter his patronage of or otherwise interfere with his access to a place of public
accommodation, he has already suffered an injury in fact traceable to the defendant's
conduct and capable of being redressed by the courts, and so he possesses standing under
Article III." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1042 n. 5 (9th Cir. 2008).

Here, Mr. Jancik has not subscribed to Redbox Instant or spent any money on
Redbox Digital's online streaming products. However, he does allege that he "has visited
[Redbox Digital's] website and is aware of the limited availability [of] streaming videos
that are closed captioned." SAC ¶ 12. He further alleges that but for this limited
availability, he would subscribe to Redbox Instant. *Id.* The Court holds that this satisfies
Article III—Mr. Jancik has adequately pled that he is "currently deterred from attempting
to gain access" to Redbox Instant based on his review of Redbox Digital's website. *See
Pickern*, 293 F.3d at 1137-38. Article III does not demand that Mr. Jancik pay for a
service that he knows he cannot use. *See Doran*, 524 F.3d at 1042 n. 5 ("Once a disabled
individual has . . . becomes aware of alleged ADA violations that deter his patronage . . .
he has already suffered an injury in fact[.]").

## 2.    Claims 1, 2, and 3: Place of Public Accommodation

Redbox Digital next argues that Mr. Jancik's disability claims under the
Americans with Disabilities Act ("ADA"), the Unruh Act, and the Disabled Persons Act
("DPA") all fail because "[Redbox Digital]'s Internet-only streaming video programming
[does not] constitute[] a 'place of public accommodation.'" The Court agrees.

To state a claim under the ADA, a plaintiff must show that "the defendant is a
private entity that owns, leases, or operates a place of public accommodation." *Ariz. ex
rel. Goddard v. Harkins Amusement Enters.*, 603 F.3d 666, 670 (9th Cir. 2010). The
Ninth Circuit has explained that a "place of public accommodation" must be an "actual,
physical place[]." *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th
Cir. 2000). Several other circuits have adopted this same limitation. *See, e.g., Ford v.
Schering-Plough Corp.*, 145 F.3d 601, 612 (3d Cir. 1998); *Parker v. Metropolitan Life
Ins. Co.*, 121 F.3d 10006, 1010-11 (6th Cir. 1997); *but see Carparts Distrib. Ctr., Inc. v.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1387-DOC (RNBx)                                    Date: May 14, 2014

Page 11

*Auto. Wholesalers Assoc. of New England, Inc.*, 37 F.3d 12, 19-20 (1st Cir. 1994); *Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999).

Although the Ninth Circuit's definition of "place of public accommodation" is narrow and encompasses only "actual, physical places," Mr. Jancik directs the Court's attention to district courts that have adopted a broader definition that includes internet websites. *See* Opp'n at 7 (citing *Nat'l Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012)). However, those cases apply the law of the circuits in which they sit, not the Ninth Circuit. *See Netflix*, 869 F. Supp. 2d 196 (applying First Circuit law).

This Court is bound by Ninth Circuit precedent. *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001) ("A district judge may not respectfully (or disrespectfully) disagree with his learned colleagues on his own court of appeals who have ruled on a controlling legal issue[.]"). Therefore, it must apply Ninth Circuit law as it stands now, following the lead of other district courts sitting in the Ninth Circuit that have applied the narrow definition of "place of public accommodation." *See, e.g.*, *Cullen v. Netflix, Inc.*, 88 F. Supp. 2d 1017 (N.D. Cal. 2012); *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1115 (N.D. Cal. 2011); *Earll v. eBay, Inc.*, No. 11-cv-00262, 2011 U.S. Dist. LEXIS 100360 (N.D. Cal. Sept. 7, 2011). In short, Redbox Digital's website, which offers Redbox Instant, is not a "place of public accommodation." *See Weyer*, 198 F.3d at 1114.[1]

Mr. Jancik posits three arguments in an attempt to circumvent the unequivocal Ninth Circuit precedent. First, he argues that the U.S. Department of Justice's interpretations of the ADA deserve deference under *Chevron U.S.A., Inc. v. Nat. Res. Defense Council, Inc.*, 467 U.S. 837 (1984). However, Mr. Jancik points only to notices of proposed rulemaking and court briefs submitted by the Justice Department. *See* Opp'n at 9-12. Neither "warrant *Chevron*-style deference." *See Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000).

Second, Mr. Jancik argues that there is a sufficient nexus between the Redbox Instant website and his experiences at the Redbox kiosks. In support of this theory, he cites *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946 (N.D. Cal. 2006). There, the district court found that the services on the Target.com website were "heavily integrated with the brick and mortar stores and operate[d] in many ways as a gateway to the store." *Id.* at 955. For example, Target customers could use Target.com to access information about store locations and hours, refill prescriptions, order photo prints for pick-up at a store, and print coupons to redeem at a store. *Id.* at 949.

---

[1] The Court takes notes that *Cullen v. Netflix, Inc.*, 88 F. Supp. 2d 1017 (N.D. Cal. 2012) is currently on appeal. *See* Opp'n at 8. That Ninth Circuit law *may* change in the future has no bearing on what *is* the law now.

However, the Redbox Instant website and the Redbox kiosks cannot be characterized as "heavily integrated"—the two services are bundled in a number of ways, but they are not integrated.  For example, a Redbox Instant subscriber is entitled to two separate services: (1) access to streaming video content online and (2) four kiosk rentals a month.  The mere fact that the services are sold together does not mean that they are "heavily integrated" or that one is a "gateway" to the other.  *See id.* at 955.  Mr. Jancik alleges only one online service that is integrated with the kiosks—the Redbox Instant smartphone application, which enables users to reserve movies at kiosks.  Opp'n at 14.  However, the complaint does not allege that Mr. Jancik suffered discrimination because he could not use the smartphone application; rather, it asserts that he was discriminated against because much of the streaming content on Redbox Instant lacked closed captioning.  In short, the Court finds that there is not a nexus between the movies offered on Redbox Instant and the Redbox kiosks; one is not the "gateway" to the other.

Third, and finally, Mr. Jancik argues that even if the Court dismisses his ADA claim, it should not dismiss his Unruh Act and DPA claims.  Opp'n at 15-16.  In support of this argument, he quotes other district courts that have held that, "[plaintiffs] may be able to pursue [their] discrimination claims if they are asserted as independent claims separate from an ADA violation."  *Id.* (citing *Cullen*, 880 F. Supp. 2d at 1024).  However, in the Complaint, Mr. Jancik's Unruh Act and DPA claims are entirely predicated on his ADA claim.  *See* SAC ¶¶ 76, 84.  In other words, even applying Mr. Jancik's legal proposition, his Unruh Act and DPA claims cannot proceed separately from his ADA claim.

In sum, the Court is bound to apply Ninth Circuit precedent, which holds that an internet website is not a "place of public accommodation."  *See Weyer*, 198 F.3d at 1114.  The Court rejects all of Mr. Jancik's arguments that the Court should depart from controlling precedent: the DOJ policy statements are not entitled to *Chevron* deference, there is not a sufficient nexus between the Redbox Instant videos and the Redbox kiosks, and his Unruh Act and DPA claims are not independent of his ADA claims.

The Court GRANTS Redbox Digital's Motion to Dismiss as to the first, second, and third claims.

### 3.        Claims 4, 5, and 6

Mr. Jancik also asserts claims under the Unfair Competition Law ("UCL"), the False Advertising Law ("FAL"), and the California Consumer Legal Remedies Act ("CLRA").  SAC ¶¶ 87-126.  Redbox Digital moved to dismiss those claims.  *See* Mot. at

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1387-DOC (RNBx)                                        Date: May 14, 2014

Page 13

16-20.  However, Mr. Jancik offers no opposition—in fact, he does not mention any of the three claims.  *See generally* Opp'n.

The Court construes Mr. Jancik's apparent abandonment of these claims as consent to dismiss.  Therefore, the Court GRANTS Redbox Digital's Motion to Dismiss as to the fourth, fifth, and sixth claims.  Mr. Jancik's UCL, FAL, and CLRA claims are DISMISSED WITHOUT PREJUDICE.

## IV. DISPOSITION

For the reasons explained above, the Court DISMISSES Mr. Jancik's claims against Redbox Retail, to the extent that they are predicated on assertions that either the ADA regulates the content or characteristics of goods offered at places of public accommodation or that 28 C.F.R. 36.307(a) does not apply to DVDs, WITHOUT PREJUDICE.  The Court also DISMISSES all of Mr. Jancik's claims against Redbox Digital WITHOUT PREJUDICE.

Mr. Jancik is granted leave to file a third amended complaint on or before June 13. 2014.  If he fails to timely file an amended complaint, then the Court will dismiss his claims WITH PREJUDICE.

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                        Initials of Deputy Clerk: jcb
CIVIL-GEN